**Noble FERREN and Margaret R. Ferren, Appellees,**

v.

**RICHARDS MANUFACTURING COMPANY, Appellant.**

**No. 83–1821.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1983.

Decided April 30, 1984.

Rehearing Denied June 7, 1984.

Carl F. Sapp, Sapp, Woods, Orr & Bley, Columbia, Mo., for appellees.

Charles E. Patterson, William T. Smith, Watson, Ess, Marshall & Enggas, Kansas City, Mo., for appellant.

Before McMILLIAN, JOHN R. GIBSON and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Defendant Richards Manufacturing Company (Richards) appeals from a judgment for plaintiffs Noble Ferren and his wife Margaret Ferren entered by the District Court[1] following a jury verdict. *See* 28 U.S.C. § 1291. Jurisdiction in the District Court was based on diversity of citizenship. *See* 28 U.S.C. § 1332. Specifically, defendant challenges the District Court's denial of its motion for judgment notwithstanding

---

1. The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

the verdict or, in the alternative, for a new trial.[2] We affirm the award of actual damages but reverse the award of punitive damages.

## Facts

In September 1975, in order to alleviate a progressive arthritic condition, Noble Ferren underwent surgery for replacement of his left hip joint. A total hip prosthesis, manufactured and sold by Richards during late 1972 and early 1973, was implanted.[3]

In June 1979, Ferren began to complain of pain in his left groin area. Ferren was examined and his left hip was x-rayed. These x-rays showed only a slight loosening where the head of the prosthesis was affixed to the replacement socket. Similar findings were made when x-rays again were taken in September 1979. In December 1979, however, x-rays taken of Ferren's left hip showed that the femoral stem of the hip prosthesis was fractured. Ferren underwent surgery in January 1980 to replace the fractured femoral portion of the prosthetic device.

This case was tried before and submitted to a jury upon a theory of strict products liability in tort. Plaintiffs' expert witness testified that the prosthesis fractured because it was metallurgically defective. The jury returned a verdict in favor of the plaintiffs, awarding Noble Ferren $75,000 in actual damages and $200,000 in punitive damages on his personal injury claim and awarding Margaret Ferren $25,000 actual damages on her claim for loss of consortium.

## Issues

This Court has not considered any issues raised in the context of defendant's motion for judgment notwithstanding the verdict because defendant did not preserve those issues by making the requisite motion for a directed verdict. Under Fed.R.Civ.P. 50(b), a motion for judgment notwithstanding the verdict does not lie unless it has been preceded by a motion for a directed verdict made at the close of all the evidence. *See, e.g., Myers v. Norfolk Livestock Market, Inc.,* 696 F.2d 555, 558 (8th Cir.1982). Accordingly, our decision is limited to the issues raised in defendant's motion for a new trial.

■■■ "[I]n a diversity case the question of whether a new trial is to be granted is a federal procedural question and is to be decided by reference to federal law." *Pitts v. Electro-Static Finishing, Inc.,* 607 F.2d 799, 802 (8th Cir.1979). The rule in this Circuit is that the grant or denial of a motion for a new trial will be reversed only when the trial court has abused its discretion. *Id.* at 803.

The critical issues raised in this case as grounds for reversal relate to the award of punitive damages. Defendant argues (1) that Missouri law does not permit recovery of punitive damages in a strict products liability action; and (2) that the evidence did not, as required by the punitive damage instruction, show that defendant knew of a defect in the prosthesis when it was sold. Defendant also argues for reversal of the actual damage award because (1) the instructions did not require the jury to find a sufficiently definite or specific defect in the product in question; (2) the only evidence of a defect in the prosthesis consisted of testimony by plaintiffs' expert witness that was so erroneous and incredible that no reasonable juror could have accepted it; and (3) the actual damage award was excessive as a result of passion and prejudice on the part of the jury because it erroneously was allowed to consider the punitive damage issue. Since appropriate objections were made in the trial court regard-

---

**2.** Defendant has not raised on appeal the District Court's denial of its alternative motion for remittitur.

**3.** The type of prosthesis involved consists of a ball-shaped stainless steel head which articu-

lates in a polyethylene socket. The socket is implanted into the patient's hip girdle, while a stem attached to the ball-shaped head of the device is inserted into the patient's femur.

ing these issues and since these issues were included in defendant's motion for a new trial, all of them were properly preserved for review by this Court.

*Liability for Punitive Damages*

■ Defendant's contention that Missouri law does not permit the recovery of punitive damages in a strict products liability action is meritless. The Missouri Court of Appeals has said that "it is apparent that no inconsistency exists between recovery under strict liability and recovery of punitive damages." *Racer v. Utterman,* 629 S.W.2d 387, 396 (Mo.Ct.App.1981), *cert. denied,* 459 U.S. 803, 103 S.Ct. 26, 74 L.Ed.2d 42 (1982). "If plaintiff, in addition to proving the conduct necessary to support the strict liability claim, can also establish a degree of fault in such conduct sufficient to justify punitive damages, those damages may also be recovered." *Id.*

■ The punitive damage issue in this case is not whether such damages are *per se* available but whether there has been shown a sufficient degree of fault to justify a punitive damage award. In a strict liability case, liability is imposed for placing into commerce an unreasonably dangerous product that causes harm; under this theory of recovery, it is unnecessary for the plaintiff to show that the defendant manufacturer was negligent or reckless or intended to commit a wrong. *See id.* Punitive damages, on the other hand, may not be awarded unless a significant degree of fault has been shown. The defendant intentionally must have committed a wrongful act known by him to be wrongful when it was committed. *See Stark v. American Bakeries Co.,* 647 S.W.2d 119, 123 (Mo. 1983) (en banc). "[K]nowledge of the wrongfulness of the act may be supplied by a complete indifference to or conscious disregard for the safety of others such that the actor must be conscious that his action

will naturally or probably result in injury." *Sledge v. Town & Country Tire Centers, Inc.,* 654 S.W.2d 176, 182 (Mo.Ct.App.1983). In the instant case the jury was instructed properly on the degree of fault necessary to support a punitive damage award in a strict liability suit.[4] The jury was told that it could award punitive damages if it believed (1) that at the time defendant sold the hip prosthesis, defendant knew that the prosthesis was in a defective condition such that it would be unreasonably dangerous when put to a reasonably anticipated use and (2) that by selling the prosthesis with this knowledge, defendant showed a complete indifference to or conscious disregard for the safety of others. *See* Designated Record (D.R.) at 48.

We have searched the record for evidence establishing that defendant knew that the hip prosthesis was defective and unreasonably dangerous and that defendant sold the product in spite of this knowledge. Among the evidence introduced at trial are some of defendant's business records. D.R. at 53–55. The records indicate that on December 1, 1972, defendant received over 500 raw prosthesis forgings[5] from a vendor. A small crack was found in one of eight to ten samples of these forgings that were tested for quality control. That surface crack was ground out of the test sample. *Id.* The records state: "grinding O.K.—no deep cracks found." *Id.* at 54. There also is testimony in the record regarding two articles which discuss fractures of the femoral stem of total hip prostheses. Tr. at 646. The first article, published in 1973, noted only one incident of femoral stem fracture in a similar prosthetic device. *Id.* The second article did reveal statistically significant incidents of femoral stem fractures, but the article was not published until 1975.

■ Defendant's business records cannot be said to establish that defendant in

---

**4.** The instruction given contained the exact wording of Missouri Approved Jury Instruction 10.05, which is based upon the rule of law announced by the Missouri Court of Appeals in *Racer v. Utterman, supra.*

**5.** These raw stainless steel forgings are machined down in size by approximately one-third before they are considered finished prosthesis products. *See* Trial Transcript (Tr.) at 462.

fact knew that the raw forgings were defective when the one small crack that was discovered during quality control testing was, according to the records, superficial and easily eliminated. Certainly there is no evidence that the one raw forging in which the small crack was discovered during quality control testing was the forging from which the actual Ferren prosthesis was made. As to the article published in 1973, there is no evidence that defendant knew of the information in the article when it sold the Ferren prosthesis sometime in late 1972 or early 1973. Even assuming that defendant did know of the article, a single femoral stem fracture would not alone have been reason for defendant to have ceased selling the device. The article published in 1975 cannot be evidence in this case that defendant knew it was selling a defective or dangerous product because the article was published long after the Ferren prosthesis had been sold.[6] There being no other relevant evidence, plaintiffs have not established a sufficient factual basis for a jury finding that defendant knowingly acted in a manner that showed complete indifference to or conscious disregard for the safety of others. Indeed, our review of the record leads us to conclude as a matter of law that there was no evidence showing that defendant knew the prosthesis was in a defective condition. Accordingly, the District Court erred in submitting the punitive damages issue to the jury and we reverse the award of punitive damages.

*Liability for Actual Damages*

Defendant argues that instructions given in this case were improper because they did not require the jury to find a sufficiently definite or specific defect in the Ferren prosthesis. *See* D.R. at 46–47. The instructions given were taken verbatim from Missouri Approved Jury Instruction 25.04, which is the instruction that would have been mandatory had this strict products liability case been tried in the Missouri courts.

A district court "has broad discretion in framing the form and language of the charge to the jury, and as long as the entire charge fairly and adequately contains the law applicable to the case, the judgment will not be disturbed on appeal." *Board of Water Works Trustees v. Alvord, Burdick & Howson,* 706 F.2d 820, 823 (8th Cir.1983). Although in a diversity case governed by Missouri law the District Court is not required to use verbatim the language of Missouri Approved Jury Instructions, *see, e.g., Porter v. C.A. Dawson & Co.,* 703 F.2d 290, 292 (8th Cir.1983), we cannot say that to do so was error. Missouri Approved Jury Instruction 25.04 is, after all, the Missouri Supreme Court's own statement of the substantive law applicable to this case.

Defendant also argues that the testimony of plaintiffs' expert witness, Dr. Gibson, as to the existence of a metallurgical defect in the Ferren prosthesis was so erroneous and incredible that no reasonable juror could have accepted it. This argument is based on the fact that Dr. Gibson's testimony contains some discrepancies as to whether the Ferren prosthesis was made by "forging" or "casting." Defendant therefore claims that there is not any credible evidence supporting the jury's verdict that the prosthesis was defective and that the actual damages awarded on that verdict must be reversed. We do not find merit in this argument.

Defendant never objected to Dr. Gibson's being allowed to testify as an expert. Whether Dr. Gibson's testimony was in fact credible was a question for the jury. *See, e.g., Ellis v. Union Pacific Railroad Co.,* 329 U.S. 649, 653, 67 S.Ct. 598, 600, 91 L.Ed. 572 (1947). Having reviewed Dr. Gibson's testimony, Tr. at 345–424, we are unable to say that the District Court erred in denying defendant's motion for a new trial on this ground.

---

6. Plaintiffs have not asserted that as a result of this article defendant had any duty to withdraw their hip prostheses from the marketplace or to warn previous purchasers of possible femoral stem fractures.

*Amount of Actual Damages*

Defendant argues that the actual damage award is excessive because of passion and prejudice on the part of the jury resulting from its erroneously being allowed to consider the punitive damage issue.

 "Assessment of damages is within the sound discretion of the jury." *Vanskike v. Union Pacific Railroad Co.*, 725 F.2d 1146, 1150 (8th Cir.1984). That assessment will not be overturned by this Court unless there is a "plain injustice" or a "monstrous" or "shocking" result. *Solomon Dehydrating Co. v. Guyton*, 294 F.2d 439, 448 (8th Cir.), *cert. denied*, 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192 (1961). This Court also is "extremely hesitant to overturn a verdict which includes damages for pain and suffering." *Vanskike, supra.* The Court cannot, however, sustain damages awarded in excess of "that which could be sustained were the case before the highest court of the state whose substantive law gives rise to the claim." *Hysell v. Iowa Public Service Co.*, 559 F.2d 468, 472 (8th Cir.1977).

 We have reviewed the record, which includes testimony by Noble Ferren of his pain and suffering. *See* Tr. at 249–54. We also have reviewed representative Missouri damage awards. Under the standards set forth above, we do not find that the award of actual damages was excessive.

### Conclusion

With respect to the award of actual damages in this case, the judgment of the District Court is affirmed. With respect to the award of punitive damages, the judgment of the District Court is reversed.