923 F.2d 1285
 Prod.Liab.Rep.(CCH)P 12,681
Steven SUTHERLAND, Appellee,
v.
ELPOWER CORPORATION and, Empire of Carolina, Inc., Appellant.
Steven SUTHERLAND, Appellant,
v.
ELPOWER CORPORATION, Appellee, and Empire of Carolina, Inc.
 Nos. 89-2775, 89-2850.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 8, 1990.
Decided Jan. 9, 1991.
 
 Joseph H. Mueller, St. Louis, Mo., for appellant, Elpower.
 Donald L. James, St. Louis, Mo., for appellant Empire.
 Robert H. Pedroli, Clayton, Mo., for Sutherland.
 Before BOWMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.
 BOWMAN, Circuit Judge.
 
 
 1
 This is a products liability case governed by the substantive law of Missouri. Jurisdiction is based on diversity of citizenship. The jury awarded plaintiff Steven Sutherland both actual and punitive damages against each of the defendants, Elpower Corporation (Elpower) and Empire of Carolina, Inc. (Empire). In ruling on motions by both defendants for judgment notwithstanding the verdict, the trial court[1] set aside the award of punitive damages against Elpower, but allowed the verdict against Empire to stand in its entirety. Judgment was entered accordingly and both Sutherland and Empire appeal. In Sutherland's appeal, we affirm. In Empire's appeal, we affirm the award of actual damages but reverse the award of punitive damages.
 
 I.
 
 2
 Sutherland was injured when the battery in his child's riding toy exploded while he attempted to recharge it. The battery, manufactured by Elpower, had been incorporated into the toy by Empire, which designed and manufactured the toy. Empire also made a specially designed charger for the Elpower battery, and this charger was included, along with written instructions, in the initial sale of each Empire riding toy. Sutherland, however, acquired his toy second-hand from a neighbor, who provided neither the instructions nor the charger. When the battery in the toy needed recharging, which it soon did, Sutherland went to a store and, relying upon the sketchy information printed on the Elpower battery, purchased a Schumacher automotive-type battery charger.[2] No warning or other safety information was affixed to the battery or to the toy.
 
 
 3
 Because the Schumacher charger was not designed to be used with the Elpower battery, Sutherland had to alter the toy's wiring to accommodate the foreign device. His first attempt at charging the battery succeeded without incident. The second time, however, as he reached down to unplug the charger, the Elpower battery exploded, the plastic battery lid struck him in the eye, and he suffered the injury that prompted this lawsuit.
 
 
 4
 At trial, witnesses for Sutherland testified to the existence of design defects in the Elpower battery as well as the wiring and safety features of the Empire toy. Sutherland's witnesses also testified, in substance, that Sutherland's attempt at recharging the battery with an automotive-type charger was reasonably foreseeable, that the battery generated hydrogen gas during recharging, and that an appropriate warning on the battery or the toy could have prevented Sutherland's injuries. Sutherland also produced engineering bulletins that Elpower had sent to Empire. One of these includes a warning specifically against the use of an automotive charger on Elpower batteries, and the others advise that hydrogen could be vented during charging and urge that every first-time user of an Elpower battery be given information regarding proper methods of charging. However, the warning regarding automotive chargers had not been included in earlier engineering bulletins, and it was not included in the bulletin that suggested the giving of information regarding proper methods of charging to first-time users. Finally, Sutherland's experts testified that in their opinion each defendant had acted with reckless disregard for the safety of consumers.
 
 
 5
 Based upon this evidence, the jury returned a verdict for Sutherland, apportioning forty percent of the responsibility to Elpower, thirty-five percent to Empire, and the remaining twenty-five percent to Sutherland. Sutherland's actual damages were determined to be $200,000, and the jury assessed punitive damages against Elpower and Empire in the amounts of $100,000 and $150,000, respectively. Elpower moved for judgment notwithstanding the verdict on the basis that the evidence did not support an award of either actual or punitive damages against it. The trial court granted this motion with respect to punitive damages and Sutherland appeals.[3] Empire sought a judgment notwithstanding the verdict with respect to its liability for actual damages. It also sought a judgment notwithstanding the verdict with respect to punitive damages, arguing that the evidence did not support the award and challenging the award on due process grounds.[4] The trial court denied Empire's motion in its entirety and Empire appeals.
 
 II.
 
 6
 In reviewing the ruling of the trial court on a motion for a judgment notwithstanding the verdict, we apply the same standard that governed the trial court. This means that we must
 
 
 7
 (a) consider the evidence in the light most favorable to the prevailing party,[5] (b) assume that the jury resolved all conflicts of evidence in favor of that party, (c) assume as true all facts which that party's evidence tended to prove, (d) give that party the benefit of all reasonable inferences which may reasonably be drawn from proved facts, and (e) deny the motion if in light of the above reasonable jurors could differ as to the conclusions that could be drawn.
 
 
 8
 McGee v. South Pemiscot School Dist. R-V, 712 F.2d 339, 343 (8th Cir.1983) (footnote added); see also Linegar v. Armour of America, Inc., 909 F.2d 1150, 1152 (8th Cir.1990). A motion for judgment notwithstanding the verdict "should be granted only 'when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the non-moving party.' " SCNO Barge Lines, Inc. v. Anderson Clayton & Co., 745 F.2d 1188, 1192-93 (8th Cir.1984) (quoting Dace v. ACF Indus., Inc., 722 F.2d 374, 375 (8th Cir.1983)); accord O'Brien v. City of Greers Ferry, 873 F.2d 1115, 1118 (8th Cir.1989).[6] We proceed with this standard in mind.
 
 III.
 
 9
 We begin with Empire's appeal, turning first to Empire's argument that the evidence is insufficient, as a matter of law, to support a finding of liability against Empire. Sutherland presented the jury with two theories of strict liability, defective design and failure to warn. In finding for Sutherland, the jury did not specify which of these two theories it was adopting as the basis for its verdict. We find the evidence sufficient under either theory to support the jury verdict finding Empire liable.
 
 
 10
 Under Missouri's law of strict liability, to succeed in an action brought under the theory of failure to warn, a plaintiff must establish that:1. the defendant sold the product in the course of his business;
 
 
 11
 2. the product was then unreasonably dangerous when put to a reasonable use without knowledge of its characteristics;
 
 
 12
 3. the defendant did not give an adequate warning of the danger;
 
 
 13
 4. the product was used in a manner reasonably anticipated; [and]
 
 
 14
 5. the plaintiff was damaged as a direct result of the product being sold without an adequate warning[.]
 
 
 15
 Nesselrode v. Executive Beechcraft, Inc., 707 S.W.2d 371, 382 (Mo.1986) (en banc) (quoting MAI 25.05 [1978 New].[7] Consequently, for Empire to prevail in this appeal, we must find that the evidence was insufficient to support a finding for Sutherland on at least one of these five points. See School District of Independence, Mo., No. 30 v. U.S. Gypsum Co., 750 S.W.2d 442, 446 (Mo.Ct.App.1988). Empire insists that the evidence was insufficient to support a finding that (a) the toy was unreasonably dangerous when sold,[8] (b) the toy was used in a reasonably foreseeable manner, and (c) Sutherland was damaged as a direct result of the sale of the product with an inadequate warning. We disagree.
 
 
 16
 Sutherland's expert witnesses testified that the toy was unsafe because of the absence of a warning that the battery should be charged only with a proper charger and that automotive chargers should not be used. Sutherland's witnesses also testified that an appropriate warning would have enabled him to avoid the injury he suffered. This testimony is clearly sufficient to support a finding that the toy was unreasonably dangerous when it was sold and that Sutherland was injured as a result of the absence of a warning.
 
 
 17
 Similarly, the record is replete with testimony that tends to show that Sutherland had proceeded to recharge the battery in a reasonably foreseeable manner. Empire argues, however, that Missouri law does not impose liability upon a defendant for failing to warn about unintended, although reasonably foreseeable, uses of its product. Appellant Empire's Brief at 11 (citing Baker v. International Harvester Co., 660 S.W.2d 21, 23 (Mo.Ct.App.1983)). In support of this position, Empire relies upon the final sentence of Baker, which baldly asserts that a manufacturer "has no duty to warn of unintended use." Baker, 660 S.W.2d at 23. We have reviewed Missouri's law regarding failure to warn in products liability cases and we conclude that Missouri does indeed impose liability for failure to warn about reasonably foreseeable, albeit unintended, uses of the defendant's product. See, e.g., MAI 25.05 [1978 New], p 4; Bhagvandoss v. Beiersdorf, Inc., 723 S.W.2d 392, 396 (Mo.1987) (en banc) (stating generally that strict liability applies to reasonably anticipated uses); Nesselrode, 707 S.W.2d at 380-81 (same). While some Missouri courts occasionally make statements to the effect that manufacturers need only warn of intended uses of their products, it appears that these courts are using the word "intended" interchangeably with the phrase "reasonably foreseeable." See, e.g., Baker, 660 S.W.2d at 23 (reasoning that the product was not used as intended or anticipated, and later stating as an afterthought, without support, that a manufacturer "has no duty to warn of unintended use"); Keener v. Dayton Elec. Mfg. Co., 445 S.W.2d 362, 366 (Mo.1969) (equating "reasonably anticipated" use with use as intended). Thus, the fact that Sutherland may not have used the toy or the battery in an intended manner does not assist Empire. As there is enough evidence to support the jury's assessment of liability against Empire, the trial court did not err in denying Empire's motion for judgment notwithstanding the verdict on the issue of Empire's liability for compensatory damages.
 
 
 18
 Empire argues that this case is factually similar to Gomez v. Clark Equipment Co., 743 S.W.2d 429 (Mo.Ct.App.1987), and that under the reasoning of Gomez Empire should not be liable for Sutherland's injuries. We disagree. Gomez involved a plaintiff who lost several fingers as a result of a collision she had while driving a lift truck manufactured by the defendant. The collision resulted from a modification the plaintiff's employer had made to the truck which partially obstructed the plaintiff's view when she drove. The court of appeals, refusing to set aside the jury's verdict for the defendant, stated that "if a modification is foreseeable, but the modification makes the product unsafe, the manufacturer is not liable." Gomez, 743 S.W.2d at 422. Empire argues that Sutherland's modification of the toy's wiring to accommodate a foreign charger was the type of modification addressed by Gomez and therefore, under the rule in Gomez, Empire should not be liable for Sutherland's injuries. Critical to the holding in Gomez, however, was the fact that the modification there was found by the jury to be the "sole cause" of the plaintiff's injuries. Gomez, 743 S.W.2d at 433. That is in contrast to the present case, in which the jury's assessment of only twenty-five percent responsibility against Sutherland belies any argument that Sutherland's modification of the toy was the "sole cause" of his injuries. Gomez, therefore, is inapposite.
 
 
 19
 The evidence also supports the jury's assessment of liability against Empire under the theory of defective design. Under Missouri law, "[t]o establish liability in a design defect case, the plaintiff bears the burden of demonstrating that the product, as designed, is unreasonably dangerous and therefore 'defective', and that the demonstrated defect caused his injuries." Nesselrode, 707 S.W.2d at 375-76.[9] Here, Boulter Kelsey, one of Sutherland's experts, testified that the uninsulated spade connectors on the toy's wire harness constituted a design flaw in Empire's toy in that the uninsulated connectors were capable of causing a spark in close proximity to hydrogen created by the charging process. Considering all inferences favorable to Sutherland, we find this evidence sufficient to support the conclusions that the toy did indeed have a defect in its design, that this defect made the toy unreasonably dangerous, and that it was the defect that caused the explosion. We therefore hold that the jury was warranted in finding Empire liable under the theory of defective design.
 
 
 20
 Empire is on firmer ground in its contention that the award of punitive damages against it must be overturned. Missouri permits the recovery of punitive damages in strict liability cases only where the plaintiff can establish that (1) "the defendant not only placed an unreasonably dangerous product in commerce, but also knew of its defective condition," and (2) the defendant "thereby showed complete indifference to or conscious disregard for the safety of others." Lane v. Amsted Indus., Inc., 779 S.W.2d 754, 758 (Mo.Ct.App.1989)
 
 
 21
 Empire contends that Sutherland failed to produce evidence sufficient to warrant a jury finding for Sutherland on either element. With respect to the second point, we agree. While we do find evidentiary support for the conclusion that both defendants were aware of characteristics of their products that potentially could result in injury, we have found no support for the conclusion that Empire acted with complete indifference to or conscious disregard for the safety of others.
 
 
 22
 Under Missouri law, to establish complete indifference or conscious disregard, a plaintiff must show a "significant degree of fault" on the part of the defendants. Ferren v. Richards Mfg. Co., 733 F.2d 526, 529 (8th Cir.1984). The defendants' actions must have been "willful, wanton, malicious or so reckless as to be in utter disregard of consequences." Roth v. Black & Decker, 737 F.2d 779, 781 (8th Cir.1984) (quoting Vanskike v. ACF Indus., Inc., 665 F.2d 188, 208-09 (8th Cir.1981), cert. denied, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982) (applying Missouri law)). To meet this high standard, the plaintiff must produce evidence that the defendant, at the time of the occurrence giving rise to liability, was "conscious that his action [would] naturally or probably result in injury." Ferren, 733 F.2d at 529 (quoting Sledge v. Town & Country Tire Centers, Inc., 654 S.W.2d 176, 182 (Mo.Ct.App.1983)); cf., Hoover's Dairy, Inc. v. Mid-America Dairymen, Inc., 700 S.W.2d 426, 436 (Mo.1985) (en banc) ("punitive damages can be awarded in a negligence action but only when the defendant knew or had reason to know that there was a high degree of probability that the action would result in injury") (emphasis added). Here we find no such evidence.
 
 
 23
 Sutherland argues in a variety of ways that since Empire was aware of the dangerous condition that caused his injury but did nothing to eliminate the dangerous condition or to provide proper warnings, Empire thereby acted with complete indifference to, or conscious disregard for, the safety of others, and thus the jury's award of punitive damages was appropriate.[10] The problem with this reasoning is that it equates a defendant's knowledge of a characteristic found to be defective with complete indifference and conscious disregard of that defendant for the safety of others. This clearly conflicts with Missouri law which permits the recovery of punitive damages only where a defendant, in addition to having knowledge of the defective quality of his product, also was aware that the sale of his product would naturally or probably result in injury. See Ferren, 733 F.2d at 529; Hoover's Dairy, 700 S.W.2d at 435-36. Thus, absent evidence permitting at least an inference that the defendants knew injury was probable, this line of reasoning is, as a matter of law, insufficient to justify the award of punitive damages against Empire.
 
 
 24
 Based upon our review of the record, we find nothing which either directly or inferentially supports the conclusion that Empire was aware, at the time it sold the riding toy, that use of its toy would naturally or probably lead to injury. The evidence, in fact, points the other way. Prior to the injury in this case, Empire had no notice of any injury associated with the use of its toy or the Elpower battery. Furthermore, while all the experts agreed that the Elpower battery would generate some hydrogen gas as it approached and exceeded a state of full charge, none denied that the toy and battery were safe when used with Empire's charger and instructions. Overall, what the evidence tends to show is not that Empire sold its toy knowing injury was a likely result, but rather that it sold the toy believing it to be safe. Whether this belief was reasonable or warranted is not relevant here. For the punitive damage award to stand, we must find evidence showing that Empire was aware the sale of its toy naturally or probably would lead to injury, and we find none.
 
 
 25
 Sutherland insists that Empire knew someone would try to charge the toy with a "bastard charger," and that an explosion naturally or probably would result. He bases this argument on the deposition testimony of Calby Joe Brewer, the designated representative for Empire. However, Brewer never indicated that use of a "bastard charger" would naturally or probably lead to an explosion. Rather, when he was asked how a person would come into contact with the acid in the Elpower battery, he responded that he believed it could occur only if someone used a bastard charger and if the battery exploded as a result. Transcript IV at 69-70 (Deposition of C. Joe Brewer, designated representative for Empire). In response to a follow up question, Brewer agreed that he was "assuming that a battery might explode because some person out there was using a bastardized charger." Transcript IV at 69-70 (Reading of deposition of C. Joe Brewer). What these statements show is not that Empire thought an explosion was naturally or probably going to occur, but rather that Empire was aware the battery in its toy might explode if improperly charged. These statements are, therefore, insufficient to support the jury's award of punitive damages against Empire.
 
 
 26
 Finally, Sutherland relies upon the testimony of his expert witnesses who testified that, in their opinions, both Elpower and Empire acted with complete indifference to or conscious disregard for the safety of others. Obviously, these opinions are phrased in the same language as Missouri's punitive damages law. However, when asked what were their bases for these opinions, both experts referred only to the evidence showing that the defendants knew of the potentially dangerous characteristics of their products, that the products possessed inadequate warnings, and that the defendants allegedly sold the products in violation of certain federal regulations. Neither indicated that he believed that the defendants knew their products would naturally or probably cause an injury, nor did either refer to evidence which would support such an inference. In fact, their testimony that the defendants acted with conscious disregard is based exclusively upon evidence which we already have indicated is insufficient, as a matter of law, to support such a inference. Thus we conclude these experts interpreted the phrase "complete indifference or conscious disregard" in a manner inconsistent with Missouri law. As a consequence, these expert opinions afford an inadequate evidentiary foundation for a jury inference that Empire acted with complete indifference to, or conscious disregard for, the safety of others.
 
 IV.
 
 27
 We turn next to Sutherland's appeal, in which he contends that trial court erred in granting Elpower's motion for judgment notwithstanding the verdict on the issue of punitive damages. His arguments here are virtually identical to those he employed attempting to justify the punitive award against Empire. We find them no more persuasive with respect to Elpower.
 
 
 28
 For instance, he argues in a number of different ways that Elpower acted with complete indifference to, or conscious disregard for, the safety of others since it sold batteries with knowledge of characteristics that potentially could lead to a hazardous condition. However, as we already have indicated, such an argument is deficient under Missouri law since it permits a finding that the defendant was completely indifferent to the safety of others without any evidence that the defendant knew its product naturally or probably would cause injury.
 
 
 29
 We can find no evidentiary support for the jury's award of punitive damages against Elpower. A review of the record reveals that the battery that injured Sutherland was one of over 340,000 similar batteries made by Elpower some six or seven years before Sutherland's accident, and that up to the time of Sutherland's injury Elpower never received notice of any other explosions or injuries associated with these batteries. It also reveals that Elpower utilized a variety of safety features in the design of the battery, and advised Empire of the potential hazards which could result from improper charging of the battery. The question with respect to punitive damages is not whether the evidence supports a verdict that Elpower sold a defective product, but whether the evidence supports a verdict that it did so with the knowledge that someone naturally or probably would be injured as a result. We find no evidence to support such a conclusion. We therefore hold that the trial court properly granted Elpower's motion for judgment notwithstanding the verdict on the issue of punitive damages.
 
 V.
 
 30
 For the reasons set forth above, we reverse the judgment of the trial court insofar as it awards punitive damages against Empire. In all other respects the judgment of the trial court is affirmed.
 
 
 
 [1]
 By consent of the parties, the case was tried before the Honorable David D. Noce, United States Magistrate Judge for the Eastern District of Missouri. 28 U.S.C. Sec. 636(c) (1990 Pocket part)
 
 
 [2]
 The only information printed upon the battery related to the discharge rate, not the charge rate, for the battery. Appellant Sutherland's Brief at 9. There is testimony that, if used properly, the Schumacher charger could safely charge the Elpower battery. Transcript III at 6-7 (Deposition testimony of Ronald A. Rizzo, designated representative for Elpower)
 
 
 [3]
 Elpower does not challenge the denial of the liability portion of its motion for a judgment notwithstanding the verdict
 
 
 [4]
 Because we agree that the evidence did not support an award of punitive damages against Empire, we need not reach the due process issue. See infra text accompanying note 10
 
 
 [5]
 The "prevailing party" is the party who prevailed in the jury's verdict, not the party who prevailed on the motion for judgment notwithstanding the verdict. See, e.g., Washburn v. Kansas City Life Ins. Co., 831 F.2d 1404, 1407 (8th Cir.1987)
 
 
 [6]
 We note that "[t]he standards for granting a directed verdict or judgment notwithstanding the verdict are the same under both federal and Missouri law." SCNO Barge Lines, 745 F.2d at 1192 n. 5; see also Crues v. KFC Corp., 729 F.2d 1145, 1148 & n. 1 (8th Cir.1984) (concluding the federal and Missouri rules are the same with respect to granting a motion for directed verdict). This eliminates the need for us to address the issue of whether to use a federal or state standard of review
 
 
 [7]
 The jury instructions on the failure to warn counts, with some very slight modifications, mirrored exactly the language quoted above from Nesselrode
 
 
 [8]
 Missouri cases have clarified that the phrase "the product was then unreasonably dangerous ...," Nesselrode, 707 S.W.2d at 382 (emphasis added), refers to the time when the defendant releases the product into the stream of commerce. See, e.g., Gomez v. Clark Equip Co., 743 S.W.2d 429, 432 (Mo.Ct.App.1987)
 
 
 [9]
 In addition, Missouri law requires the plaintiff in a design defect case to establish that the defendant sold the defective product in the course of its business and that the product was used in a reasonably anticipated manner. See MAI 25.04 [1978 Revision]; see also Keener, 445 S.W.2d at 364-66. Since the former is not contested, and we already found evidence sufficient to support a finding of the latter, we omit both from the discussion above
 
 
 [10]
 Some of his arguments are not this well formed. For example, he makes the argument that he is entitled to punitive damages against both defendants because they each violated federal regulations in the production and sale of their respective products. In neither case does he make an effort to show us how a violation of federal regulations, without more, supports a punitive award under Missouri law