21 F.3d 432
NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that no party may cite an opinion not intended for publication unless the cases are related by identity between the parties or the causes of action.
 JAMES B. NUTTER & COMPANY, Appellant,
v.
DEAN WITTER REYNOLDS, INC., Appellee.
 No. 93-3153.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: March 18, 1994.
Filed: April 6, 1994.
 
 Before FAGG, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.
 PER CURIAM.
 
 
 1
 James B. Nutter & Company (Nutter) received a jury verdict on its conversion claim seeking $19,835.38 (including interest) against Dean Witter Reynolds, Inc., (Dean Witter) based upon Dean Witter's refusal to return $17,866.21 of principal and interest paid on a Government National Mortgage Association (GNMA) adjustable rate Pool Certificate held by Dean Witter. The jury also found in favor of Nutter on Dean Witter's counterclaim for Nutter's alleged failure to deliver them a proper certificate. The trial court, however, refused to submit to the jury Nutter's claim for punitive damages. Nutter's appeal asserts error in the trial court rejection of Nutter's punitive damages claim. We affirm.
 
 I.
 
 2
 On November 26, 1991, James B. Nutter, Jr., (Nutter, Jr.) talked twice with Thomas H. Boughey of Dean Witter concerning the sale by Nutter to Dean Witter of three different GNMA adjustable rate mortgage-backed securities.[1] Nutter, Jr., received bids from Boughey for those securities. Later that day, Nutter, Jr., again called Dean Witter, and speaking with account executive John Ohman, accepted the bids.
 
 
 3
 A dispute later arose between the parties as to whether Dean Witter intended to purchase a certificate with a reset date of January or April.[2] Nutter claimed the former; Dean Witter argued the latter. The contested certificate bought by Dean Witter, issued December 1, 1991, had a January 22, 1992 reset date; Dean Witter sold the certificate to Vining-Sparks mistakenly believing it had an April reset date. At trial, both Nutter, Jr., and Ohman testified that the reset date was not mentioned when Nutter accepted Dean Witter's offer. Nor did Nutter's fax to Dean Witter providing information as to the GNMA-assigned pool number of the security, dated December 9, state the reset date. The evidence supported the conclusion, however, that each party reasonably believed that the reset date was as each individually thought.
 
 
 4
 Dean Witter received the certificate from Nutter on December 17, 1991, but because delivery was "free," it did not have to pay the purchase price until the January 22 settlement date. On January 2, Dean Witter sent Nutter written confirmation of the purchase. On January 20, because Dean Witter was in possession of the certificate in December and was thus the apparent owner, the payment of principal and interest in the amount of $17,866.21 was made to Dean Witter.
 
 
 5
 On January 22, Dean Witter realized that the certificate had a January reset date. Because it was not a certificate with an April reset, Dean Witter refused Nutter's request for payment. The certificate was returned to Nutter on January 29 or 30 and sold for approximately $800 less than the purchase price Dean Witter was to pay. The evidence establishes that Dean Witter withheld the January payment to protect Dean Witter's assets and to avoid a possible greater loss arising from Nutter's failure to deliver an April reset date certificate.
 
 
 6
 Nutter contends that the district court erroneously failed to submit to the jury the issue of punitive damages relative to Dean Witter's conversion of the principal and interest payment made on a certificate that Dean Witter had not paid for, refused to accept, and the payment of which Dean Witter was not even entitled to because it covered a period prior to the settlement date. In addition, Nutter argues that Dean Witter's failure to return Nutter's phone calls, failure to consult its legal department, failure to conduct complete investigation as to the validity of Dean Witter's claimed dispute relating to the purchase of the certificate and continued refusal to return the converted funds demonstrates Dean Witter's reckless indifference to Nutter's rights sufficient to make a submissible case for punitive damages. Based upon evidence demonstrating the above-stated conduct, Nutter concludes that the district court erred in not submitting its requested jury instruction on the issue of punitive damages and in failing to grant Nutter's motion for a new trial on the issue of punitive damages.
 
 II.
 
 7
 Punitive damages are recoverable for intentional torts under Missouri law " 'for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others.' " Burnett v. Griffith, 769 S.W.2d 780, 789 (Mo. banc 1989) (quoting Restatement (Second) of Torts, Sec. 908(2) (1979)). "[T]o establish complete indifference or conscious disregard, a plaintiff must show a 'significant degree of fault' on the part of the defendant[ ]. The defendant[']s actions must have been 'willful, wanton, malicious or so reckless as to be in utter disregard of consequences.' " Sutherland v. Elpower Corp., 923 F.2d 1285, 1290-91 (8th Cir. 1991) (citations omitted).
 
 
 8
 Our review of the record fails to demonstrate that Dean Witter acted with the requisite mental state to support instructing the jury on punitive damages. Rather, the evidence establishes that Dean Witter conducted an investigation into the dispute, from which it based its conclusion that Nutter sent the wrong certificate and its actions throughout the dispute were made in good faith, and although mistaken, did not amount to outrageous conduct as necessary to sustain an award for punitive damages.
 
 
 9
 Nutter also challenges the district court's exclusion from evidence portions of the depositional testimony of Dean Witter's account executive Tom Thompson, as well as statements allegedly made by Thompson to Nutter, Jr., and offered through Nutter, Jr. The evidentiary rulings herein contested were not improper, and thus the district court properly excluded the evidence of which Nutter complains.
 
 
 10
 Based upon the foregoing, the judgment is affirmed.[3]
 
 
 
 [1]
 GNMA Pool Certificates are issued by the Government National Mortgage Association and are backed by a pool of FHA-insured mortgages. Each mortgage is secured by a single-family home. To create a GNMA Pool Certificate, a mortgage banker or other approved financial institution assembles mortgages with similar characteristics and causes them to be pooled so that they secure the GNMA certificate. Monthly payments are made to the holder of a GNMA mortgage-backed security, which are the same as the payments on the underlying mortgages. That is, a portion of each month's payment is interest and a portion is a return of principal. With an adjustable rate mortgage (ARM)-backed security, the interest rate is subject to change
 
 
 [2]
 The reset date refers to the date on which the interest rate on an ARM-backed security is adjusted, which, with GNMA securities, can occur only in January, April, July or October
 
 
 [3]
 In light of our determination of Nutter's punitive damages claim, plaintiff's claim of evidentiary error relating to attorney's fees is moot