925 F.Supp. 637 (1996)
Sean LEONARD, Plaintiff,
v.
The BUNTON CO., Defendant.
No. 4:95CV666SNL.
United States District Court, E.D. Missouri, Eastern Division.
May 10, 1996.
*638 *639 Brian A. McKinsey, McKinsey and Glover, St. Louis, MO, for plaintiff.
Lisa M. Wood, Peter J. Krane, James V. Hetzel, Armstrong and Teasdale, St. Louis, MO, for defendant.

MEMORANDUM
LIMBAUGH, District Judge.
Plaintiff has filed this strict products liability action seeking to recover damages for injuries sustained while cleaning a commercial lawnmower manufactured by the defendant. Plaintiff alleges that the lawnmower was unreasonably dangerous and defective both as to its design and lack of adequate warnings. This matter is before the Court on the defendant's motion for summary judgment (# 14), filed March 11, 1996. Responsive pleadings have been filed. This cause of action is set for trial on the Court's May 20, 1996 trial docket.
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to an examination of the facts.
The relevant facts of this case are largely undisputed. On April 25, 1994 plaintiff was employed by a lawn maintenance company owned by Chris Wilson. Plaintiff had just finished cutting a lawn with high wet grass using a Bunton 48 inch "walk-behind" commercial *640 lawnmower[1]. He was starting to load it onto a truck used to transport Wilson's lawnmowers when Wilson directed him to first clean off the accumulated grass clippings on the top deck of the mower. Plaintiff left the engine of the mower running and put it in neutral. He first attempted to clean the clippings off by use of a leaf blower. This proved to be unsuccessful.
With the engine still running and the mower still in neutral, plaintiff placed his left hand in among the belts to attempt to brush away the clippings. His hand touched a stationary belt used to drive one of the blades. The belt began moving and carried plaintiff's hand into the spindle upon which the belt turned. Plaintiff sustained serious and permanent injuries to his left hand.[2]
The subject mower was manufactured in 1991. As originally designed and manufactured, it had certain safety features including a safety interlock system with an operator's presence control, shields, and warnings on the machine. Additional warnings regarding maintenance and use are provided in the Operator's Manual which accompanies the machine when sold.
The area of the machine where the belts are located is covered by a 14 gauge steel shield. It is attached to the mower deck by sliding one end beneath three shoulder bolts located near the engine of the machine and fastening it to the deck by the use of three wing-nuts.
The operator's presence control is designed and manufactured to require the operator to be at the controls of the mower if the engine is running and either the traction device is engaged or the mower implement is engaged. If the operator leaves the controls while the engine is running and either the traction device is engaged or the mower implement is engaged, the engine will shut off and mower will stop. Affidavit of Steven Ellis. However, if the traction and mower implement are left in neutral, and the operator leaves the controls, the engine will continue running. The subject mower was not designed or manufactured with a deadman control (i.e. a safety device which shuts off the engine whenever the operator leaves the controls). Deposition of Steven Ellis, pgs. 43, 50.
On the machine are decals setting forth warnings concerning the use and operation of the machine. Decals on the operator's controls warn the operator against leaving the engine running when leaving the machine, keeping all shields and safety devices in place and encouraging the user to read the Operator's Manual. Defendant's Exhibit G. Other decals on the machine warn the user against placing hands and feet in certain areas of the machine, especially when the engine is running.[3] The operator's manual warns against use of the machine without all shields and safety devices in place; that the engine should be turned off when the operator leaves the machine; that the engine should be turned off and the spark plug disconnected when working on the mower; and that the mower should not be used without the safety interlock devices or with the safety interlock devices by-passed. Defendant's Exhibit H; pgs. 3, 4, 8-9, 10. There is no warning decal on the machine or in the operator's manual regarding any potential hazard associated with touching or placing tension on a stationary belt while the engine is running but the mower is in neutral.
At the time of the accident, the operator's presence control had been dismantled, and the safety interlock devices removed. Furthermore, the shield covering the belts had been removed. Although there is some dispute *641 as to whether Wilson bought the mower with these features either removed or dismantled, or did it himself, there is no dispute that the modification of the mower was done by some person other than the defendant. Plaintiff's Deposition, pg. 19; Wilson Deposition, pg. 7.[4] At the time of the accident, the warning decals were on the mower. At the time of the accident, plaintiff had not read the operator's manual or been instructed by his employer in the use of the subject lawnmower. Plaintiff's Deposition, pg. 17.
Plaintiff alleges that the Bunton lawnmower manufactured by defendant was unreasonably dangerous and defective in six ways: 1) failure to prevent removal of the belt drive cover with the engine running; 2) failure to apply the brake to the primary drive shaft; 3) failure to follow generally accepted standards for guarding and to adequately guard the user from the moving belts, shafts, and nip points; 4) failure to adequately warn the user of the hazards associated with the unexpected movement of the blade drive belts; 5) failure to warn the user that the blade drive belts could be accidentally or unintentionally engaged; and 6) failure to equip the mower with a deadman's switch. Defendant contends that it is not liable for the plaintiff's injuries because the safety features, including the shield covering the blade drive belts had been removed by a third-party. Consequently, as designed and manufactured by the defendant the lawnmower is not unreasonably dangerous, and was only rendered dangerous by the intervention of a third-party. Furthermore, defendant argues that since the lawnmower was not defective when placed in the stream of commerce, plaintiff's claims for failure to warn must fail. Plaintiff counters that the accident would have occurred despite the absence of the safety features because in order to clean the mower, the operator must remove the shield. He further argues that it was foreseeable that an operator would attempt to clean the blades with the engine running because the purpose of the operator's presence control is to keep the engine running even if the operator is not at the controls. He further argues that a deadman's switch was available technology at the time because defendant used it on other machines but rejected it for use on the subject lawnmower. Finally, the plaintiff argues that not only was the lawnmower defectively designed but it lacked adequate warnings concerning the potential hazard of coming in contact with a stationary belt while the engine was running and the machine in neutral.

STRICT LIABILITY  PRODUCT DESIGN
Plaintiff alleges that defendant failed to prevent removal of the belt drive cover with the engine running, failed to apply the brake to the primary drive shaft, failed to follow generally accepted standards for guarding and to adequately guard the user from the moving belts, shafts, and nip points, and failed to equip the mower with a deadman's switch. These allegations form the basis for the plaintiff's first theory of liability  strict liability for defective design.
This products liability case is before this Court on diversity jurisdiction and the substantive law of Missouri is controlling. Missouri has adopted § 402A of the Restatement (Second) of Torts as its rule of strict liability. Drabik v. Stanley-Bostitch, Inc., 997 F.2d 496, 505 (8th Cir.1993); Pree v. Brunswick Corp., 983 F.2d 863, 865 (8th Cir.1993); Sutherland v. Elpower Corp., 923 F.2d 1285, 1290 (8th Cir.1991); Stinson v. E.I. DuPont De Nemours & Co., 904 S.W.2d 428, 430-31 (Mo.App.1995). Section 402A imposes liability on a manufacturer if the product is in an unreasonable dangerous condition when put to an anticipated use, and the plaintiff was damaged as a direct result of the defective condition as existed when the product was placed into the stream of commerce. See, Drabik, at 505; Stinson, at 430.
Under Missouri law, in order to recover under the theory of strict liability for defective design, a plaintiff must demonstrate that the product, as designed, is unreasonably *642 dangerous and therefore defective, and that the demonstrated design defect caused his/her injuries. Jones v. Ryobi, Ltd., 37 F.3d 423, 425 (8th Cir.1994); Sutherland, at 1290; Stinson, at 431. Specifically, the plaintiff must establish:
1) the defendant sold the product in the course of its business;
2) the product was then in a defective condition unreasonably dangerous when put into a reasonably anticipated use;
3) the product was used in a manner reasonably anticipated; and
4) the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold.
Pree, at 865 citing Linegar v. Armour of Am., Inc., 909 F.2d 1150, 1152 (8th Cir.1990).
"Whether a product is unreasonably dangerous is the determinative factor in a design defect case." Pree, at 865 citing Hylton v. John Deere Co., 802 F.2d 1011, 1015 (8th Cir.1986) (citing Nesselrode v. Executive Beechcraft, Inc., 707 S.W.2d 371, 378 (Mo.1986). What constitutes "unreasonably dangerous" is not clearly defined by Missouri courts or the Eighth Circuit Court of Appeals. In Nesselrode, supra, the Missouri Supreme Court stated that "the primary inquiry in a design defect case is whether the product  because of the way it is designed  creates an unreasonable risk of danger to the consumer or user when put to normal use." Id., at 375. This "consumer expectation" test has been embraced by some Missouri courts and rejected by others. See, Pree, at 865-868 (applying the "consumer expectation" test after reviewing Missouri decisions which have embraced it); Drabik, at 507 (rejecting the "consumer expectation" test after reviewing Missouri decisions which have not embraced it). However, the courts appear to be consistent in holding that it is for a jury to decide the ultimate issue of what constitutes "unreasonably dangerous" in a design defect case. Drabik, at 506; Pree, at 866. "Unless a court can affirmatively say as a matter of law that the design renders a product `unreasonably dangerous', the question is generally one for the jury." Pree, at 866 citing Nesselrode, at 378.
Defendant claims that it is not liable under plaintiff's theory of strict liability  defective design because 1) the lawnmower had been modified by a third-party subsequent to the defendant's placement of it into the stream of commerce; 2) the lawnmower was not being used in a reasonably anticipated manner when the accident occurred; and 3) plaintiff's injuries were the result of the third-party modification of the product, not the alleged "defective design" of the product.
It is well-established under Missouri law that in order for a plaintiff to recover on a theory of strict liability for defective design, a plaintiff must prove that his or her injury was the direct result of a defect that existed when the product was sold. Jones v. Ryobi, at 425. When a third-party's modification of the product makes a safe product unsafe, the seller/manufacturer is relieved of liability even if the modification is foreseeable. Jones v. Ryobi, at 425 citing Gomez v. Clark Equipment Co., 743 S.W.2d 429, 432 (Mo.App.1987). In the present case, Leonard must show that the lawnmower had not been modified to create a defect that could have proximately caused his injuries.
It is undisputed that, at the time of Leonard's accident, the lawnmower's belt drive cover had been removed, all interlock devices removed, and the operator's presence control dismantled. Defendant contends that as designed, the lawnmower was safe, and that the removal or by-passing of the safety features by a third-party proximately caused plaintiff's injuries. After careful review of the evidence before the Court, and the parties' pleadings, the Court finds that plaintiff has produced sufficient evidence to make a submissible case to the jury on his claim of defective design.
Plaintiff primarily argues that as designed, the lawnmower was unsafe, because it lacked a deadman's control.[5] A deadman's control *643 causes the mower to stop running whenever the operator leaves the controls. He has produced evidence showing that the deadman's control has been used in other commercial walk-behind mowers for many years; and that defendant has this safety device on a smaller version of the subject lawnmower. Furthermore, defendant's corporate officer Steve Ellis testified that an operator's presence control was specifically put on the subject lawnmower, instead of a deadman's control, so that the operator could leave the mower's controls but keep the engine running (thereby allowing the operator to go and remove an obstacle and resume mowing without having to startup the mower again). Furthermore, Ellis and defendant's own expert David Rolston, both testified that by having the lawnmower designed so as to allow the operator to put the mower in neutral, disengage the blade, but keep the engine running, it was "conceivable" that contact with the belts would cause the type of accident which plaintiff had. Ellis Deposition, pg. 43; Rolston Deposition, pg. 77.
Defendant contends that plaintiff had failed to meet his burden of showing that removal of the belt drive cover and dismantling of interlock devices and the operator's presence control did not create the defect which proximately caused his injury. The Court disagrees. Plaintiff has produced evidence by which a jury could find that the modification of the lawnmower did not proximately cause his injury. Both Ellis and Rolston testified that plaintiff's accident could have happened regardless of the absence of the original safety devices. It is undisputed that the mower is specifically designed to keep the engine running when the operator is not at the controls. Furthermore, although defendant has warning labels instructing the operator to keep all shield and safety devices in place; defendant also advises routine maintenance and cleaning of the machine which requires the removal of the belt drive cover. Finally, although defendant has warning labels to advise the operator to shut the engine off whenever leaving the controls, it purposely designed the lawnmower with an operator's presence control which allows the operator to leave the controls (to pick up debris, rocks, etc.) but keep the engine running.
Defendant next contends that it cannot be held liable because Leonard was not using the mower in a reasonably anticipated manner. Specifically, defendant contends that mowing grass, and not cleaning the mower, is the "reasonably anticipated" use of the mower; and furthermore, it is reasonably anticipated that maintenance and cleaning would be performed with the mower turned off.
Without a doubt a "reasonably anticipated" use of a lawnmower is to cut grass. However, a product may have more than one "reasonably anticipated" use. Since the defendant provides instructions and warnings regarding the maintenance and cleaning of the lawnmower, a jury could find that plaintiff's accident occurred while he was engaged in a "reasonably anticipated" use of the mower. Furthermore, although the Court suggests that cleaning the mower while the engine is on may not be a prudent decision; plaintiff's thought-process is not the issue. Defendant's expert Rolston testified that cleaning the mower while the mower was in neutral but the engine running was foreseeable, and in fact, other persons had done just that and also incurred injuries. Rolston Deposition, pgs. 81-82.
Finally, defendant argues that it was the modifications, not the mower's design, which caused plaintiff's injuries. Defendant cites the case of Jones v. Ryobi, supra in support of its position. The Court has carefully reviewed the cited case and finds that the facts of that case are dissimilar to the facts in this case. The Jones court held that a third-party's modification, and not the printing press' design, was responsible for the plaintiffs injuries. Plaintiffs employer had removed a plastic guard which prevented the operator (plaintiff) from reaching into moving parts and dismantled the electric interlock *644 switch that automatically shut off the press if the guard was opened. Jones v. Ryobi, at 424-25. Plaintiff Jones was injured when she placed her hand into the moving parts area to adjust the eject wheels and her hand was crushed. The Jones Court specifically found that "[t]he press was safe before the modification because the press would not run without the safety guard covering the moving parts." Jones v. Ryobi, at 425. In the present case, plaintiff has produced sufficient evidence showing that removal of the belt drive cover or dismantling of the operator's presence control would not have shut off the engine and kept the belt from moving. Plaintiff has made a submissible case showing that the lawnmower had not been modified to create a defect that could have proximately caused his injuries.
In light of the above-referenced findings, the Court concludes that the issue of whether the subject lawnmower's design rendered it "unreasonably dangerous" is an issue best left for a jury to decide. Defendant's motion for summary judgment as to defective design will be denied.

STRICT LIABILITY  FAILURE TO WARN
Under Missouri law, in order for a plaintiff to recover under a theory of strict liability for failure to warn, s/he must establish that 1) the defendant sold the product in the course of its business; 2) the product was unreasonably dangerous at the time of the sale when used as reasonably anticipated without knowledge of its characteristics; 3) the defendant did not give an adequate warning of the danger; 4) the product was used in a manner reasonably anticipated; and 5) the plaintiff was damaged as a direct result of the product being sold without an adequate warning. Campbell v. American Crane Corp., 60 F.3d 1329, 1331 (8th Cir.1995); Sutherland v. Elpower Corp., at 1288-89; Tune v. Synergy Gas Corp., 883 S.W.2d 10, 13 (Mo.1994); Nesselrode, at 382. Furthermore, there are two separate requirements of causation in a strict liability  failure to warn case: 1) the product for which there was no warning must have caused the plaintiff's injuries; and 2) the plaintiff must show that a warning would have altered the behavior of the individual(s) involved in the accident. Campbell, at 1331; Tune, at 14; Arnold v. Ingersoll-Rand Co., 834 S.W.2d 192, 194 (Mo.1992).
In most cases a plaintiff produces sufficient evidence to raise a legitimate jury question whether the product caused the plaintiff's injury. Usually it is the second part of causation which proves to be trouble-some. Missouri law provides for a presumption that a warning will be heeded. "If there is sufficient evidence from which a jury could find that the plaintiff did not already know the danger, there is a presumption that a warning will be heeded." Tune, at 14 citing Arnold v. Ingersoll-Rand, at 194. This presumption assumes that "a reasonable person will act appropriately if given adequate information." Arnold v. Ingersoll-Rand, at 194. Thus, a court (before applying the presumption) must first ascertain whether adequate information is available absent a warning; i.e., would a warning have imparted additional information regarding the existence of a danger. Arnold v. Ingersoll-Rand, at 194.
Defendant's only argument in support of its motion as regards plaintiff's claim for failure to warn is that such a claim requires evidence of product failure or malfunction. See, Crossfield v. Quality Control Equipment Co., Inc., 1 F.3d 701, 703 (8th Cir.1993). Although this argument is accurate, it is inapplicable to the case at hand. Crossfield, supra, as well as the cases it cites in support of this pronouncement, dealt with the issue of a supplier's liability where a non-defectively designed or manufactured component part is alleged to become unreasonably dangerous only because of the integration of the part into a larger machine system. The Crossfield Court specifically found that based on Missouri law, the supplier of a non-defectively designed or manufactured component part could not be held liable for failing to warn of a hazard that may arise after the part is integrated into a larger machine system. Crossfield, at 703. This is not the situation in the present case. The present case is not about a component part which did not malfunction or failed to perform as intended; it is about a machine which, as a *645 whole, is alleged to have been defectively designed because the belts are capable of moving when the mower is in neutral but the engine is still running and/or unreasonably dangerous because defendant failed to warn of the potential hazard of the belt(s) engaging upon accidental contact, even if the mower is in neutral but the engine is running. Furthermore, even if defendant's argument was applicable to the case at hand, the Court has found that the plaintiff has made a submissible case for defective design.
As for meeting the requirements of causation, the Court believes that the presumption that a warning would be heeded is applicable. Plaintiff has met his burden in showing that he was not aware of the danger of touching the belt(s) when the mower was in neutral but the engine still running. Plaintiff's Deposition, pgs. 35-36, 87. He testified that he knew that if the belts (or other parts) were moving, it was unsafe to place his hands within the moving parts. He further stated that he had only viewed the belts moving when the blades were engaged. Thus, a jury could find that Leonard did not know of the danger of the belt suddenly moving even if the blades were not engaged, as long as the engine was still running. This issue then gives rise to the presumption that since Leonard was not aware of the danger of touching a stationary belt when the mower was in neutral but the engine running, he would have heeded a warning which would have provided him with the additional information regarding the hazard of touching a belt even if the blades are not engaged, but the engine is still on.
After reviewing the evidence before the Court and the parties' pleadings, the Court finds that the plaintiff has produced sufficient evidence to submit the issue of failure to warn to a jury. Defendant's motion for summary judgment as regards plaintiff's claim under strict liability for failure to warn will be denied.
NOTES
[1] The subject lawnmower is model number B48-14K, serial number TTB486163 and was manufactured by the defendant.
[2] Specifically, plaintiff's left index finger was amputated at the proximal joint, and he sustained fractures and lacerations to his left middle and ring fingers. His index finger was surgically reattached; however, he has limited range of motion and use of the fingers and hand, plus permanent scarring.
[3] At least three decals, located on various areas of the lawnmower, state:
 DANGER
 ROTATING BLADE
 DO NOT PUT HANDS OR FEET UNDER OR
 INTO MOWER WHEN ENGINE IS RUNNING

[4] In the future, counsel are advised to separate deposition testimony by deponent, clearly label the testimony as to the deponent, and attach as individual exhibits according to deponent. It is very difficult to track deposition testimony when all testimony is grouped together with page numbers in nonsequential order.
[5] In his complaint, plaintiff also alleges defective design because the defendant failed to design the lawnmower in such a way as to prevent removal of the belt drive cover while the engine was running, or to have a brake applied to the primary drive shaft. Plaintiff totally failed to address these two alleged design defects in his response to the summary judgment motion. He focused entirely on the absence of a deadman's switch and lack of warning that contact with the belts while the engine was running would cause the belts to move. The Court is not sure whether plaintiff has abandoned his other alleged design defects; however, the Court will deem them abandoned if evidence to support them is not produced at trial.