Roy L. **HYLTON**, et ux., Appellant,

v.

**JOHN DEERE COMPANY and Deere and Company**, Appellees.

No. 85–2292.

United States Court of Appeals, Eighth Circuit.

Submitted June 9, 1986.

Decided Oct. 1, 1986.

---

Before JOHN R. GIBSON, FRANK MA-GILL, Circuit Judges, and JOHN K. RE-GAN,* District Judge.

REGAN, Senior District Judge.

After a trial to the court on the issue of liability, plaintiffs Roy L. Hylton and Linda Hylton appeal from the judgment of the district court finding that the John Deere Model #45 combine in question was not unreasonably dangerous as designed and the defendants were not strictly liable under *Restatement (Second) of Torts* § 402A as applied in Missouri. We affirm the district court's judgment.

The combine involved in the instant case was manufactured and sold by defendants in 1967. In September of 1983, Mr. Hylton bought the combine at a farm sale in Cameron, Missouri, for $1,275. It is self-propelled and is equipped with a grain bin into which grain is deposited as it is harvested. The combine is equipped with a loading auger which delivers grain to the bin. There is also a leveling auger in the bin which extends from the loading auger. The leveling auger has protruding flights on part of its smooth shaft that actually level the grain.

On November 17, 1983, Mr. Hylton was running the combine on the farm of Norman Moe. Mr. Hylton stopped the combine and performed some routine maintenance

---

* The HONORABLE JOHN K. REGAN, Senior United States District Judge for the Eastern Dis-trict of Missouri sitting by designation.

on the machine. He disengaged everything but left the motor running. While removing some debris from the grain bin, an address book dropped from his pocket into the bin. He unsuccessfully attempted to retrieve the book with a spud hoe.

Mr. Hylton next reached into the cab of the combine and pulled the throttle all the way back. In the past, this action had resulted in the motor dying within 15–20 seconds. In his experience, killing the motor in this manner made it easier to restart. Assuming that the motor was going to die since it had started to spit and sputter, he climbed into the grain bin to retrieve his book within 8–10 seconds after he had pulled back on the throttle.

After climbing into the grain bin, Mr. Hylton crossed over the loading/leveling auger and squatted down to pick up his book. He was facing the rear of the combine and grain bin with his back to the auger. After he had squatted down, he heard something pop and felt himself being pulled back. The smooth shaft of the leveling auger had wrapped up the shirt tail of his jacket. He reached for the top of the bin, but he was unable to pull free. He tried to grab the coil wire with his left arm to stop the engine, but was unable to reach it. Mr. Hylton then tried to rip open his jacket. However, he was unable to do so because the buttons were sewn on with nylon. He did finally unbutton the jacket and rip open the snaps on his shirt. By this time, the auger was trying to pull his head under. He threw his right arm over the auger to slow it down. He stayed in that position for about 25–30 minutes trying to free himself with the auger at his right armpit. Unfortunately, his efforts to free himself were unsuccessful. After the 25–30 minute period, he lost complete use of his right arm.

As a result of his injuries, Mr. Hylton suffered an amputation of his right arm. He sued the defendants for his injuries contending that the combine was defectively designed. Mrs. Hylton sued the defendants for loss of consortium.

The liability phase of the instant case was tried before the United States District Court for the Western Division of the Western District of Missouri. Expert witnesses for both parties testified as to whether the combine as designed was defective and unreasonably dangerous. The district court held that the combine as manufactured was not unreasonably dangerous. Thus, the district court ruled that the defendants were not strictly liable. The district court also ruled that there was no actionable negligence on the defendants' part.

The plaintiffs argue that the district court erred in that: 1) the district court's judgment was not based on substantial competent evidence because there was uncontradicted evidence that the defendants' combine was in a defective condition and unreasonably dangerous, 2) the district court's judgment was based on a finding that the combine was not unreasonably dangerous which is not required by Missouri products liability law in a design defect case, and 3) the district court improperly allowed the defendants to amend their answer to plaintiffs' First Amended Complaint.

When reviewing a trial court's decision, Rule 52(a) of the Federal Rules of Civil Procedure states that in cases tried to the court, "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." A finding of fact is not clearly erroneous unless " * * * the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). This court has applied the clearly erroneous test of Rule 52(a) in reviewing a trial court's finding that a product is unreasonably dangerous. *Azalea Fleet v. Dreyfus Supply & Machinery Corp.*, 782 F.2d 1455, 1461–62 (8th Cir.1986).

■ In the instant case, the district court heard conflicting testimony from plaintiffs' expert and defendants' expert as to whether the combine was defectively designed and unreasonably dangerous. A finding based upon the trial court's decision to credit the testimony of one of two or more witnesses, if internally consistent, can virtually never be clear error. *Anderson v. City of Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1513, 84 L.Ed.2d 518 (1985). Plaintiffs' expert testified that the combine was defectively designed in five ways. First, he stated that the combine was defective because the leveling auger in the grain bin was unguarded. Defendants' expert said that placing a guard on the leveling auger would seriously impair the ability of the auger to level the grain and would damage the grain kernels. The district court decided that the weight of the evidence was on the defendants' contention and rejected plaintiffs' first alleged defect.

The second defect stated by the plaintiffs' expert was that the grain bin on the combine was not enclosed with a lid that would prevent the auger from turning when opened. Defendants' expert said that placing a cover on the grain bin would cause several collateral problems including (a) reducing the wind coming across the bin which helps to remove dust, weed seeds, and other organic material; (b) raising the height of the bin since a heavy duty cover would invite people to stand on the covers, thus necessitating the use of handrails; and (c) many farmers would remove the cover anyway since they frequently use boards to extend the capacity of their combines' bins. The district court decided that the weight of the evidence was on the defendants' contention and rejected plaintiffs' second alleged defect.

The third defect stated by the plaintiffs' expert was that the clutch pulley system on the combine was defectively designed in that the auger could engage even when the clutch was in neutral. The defendants' expert said that the clutch design suggested by the plaintiffs' expert to replace the existing clutch on the combine would fail to get full clutching action. The district court decided that the weight of the evidence was on the defendants' contention and rejected the plaintiffs' third alleged defect.

■ The fourth and fifth ways that the plaintiffs claimed that the combine was defective and unreasonably dangerous were specifically unrebutted by the defendants. The district court was faced with the decision to accept or reject the two unrebutted contentions. The fact finder's choice between two permissible views of the evidence cannot be clearly erroneous. *Anderson*, 105 S.Ct. at 1512. The plaintiffs' fourth alleged defect was that the warnings of the unguarded auger were improper or inadequate. The district court rejected this argument because the plaintiffs failed to show that any change in the language of the warning decals would have prevented Mr. Hylton from climbing into the grain bin.

The plaintiffs' fifth alleged defect was that there was no emergency stop system that would have enabled Mr. Hylton to have stopped the combine's motor within six or seven seconds. The district court agreed that some type of emergency stop system could have been used to protect the bin area when the combine was manufactured in 1967. However, the court found that the lack of such a system did not render the combine unreasonably dangerous. Based on these findings as to the plaintiffs' five alleged defects, the district court ruled that the defendants' combine was not unreasonably dangerous. After reviewing the entire evidence, we are not left with a firm and definite conviction that the district court's judgment was clearly erroneous.

■ This court gives deference to a district court's interpretation of state law. *Hollman v. Liberty Mut. Ins. Co.*, 712 F.2d 1259, 1261 (8th Cir.1983). In the instant case, the district court applied the law of strict products liability in a design defect case found in Section 402A of the *Restatement (Second) of Torts*, which has been adopted by the Missouri courts. *Nesselrode v. Executive Beechcraft, Inc.*, 707

S.W.2d 371, 375 (Mo. banc 1986). Under Missouri's application of Section 402A, the concept of unreasonable danger is determinative of whether the product is defective in a design defect case. See *id.* at 378. The plaintiff must prove that the product, when sold, was in a defective condition unreasonably dangerous for use. *Laney v. Coleman Co., Inc.*, 758 F.2d 1299, 1301–02 (8th Cir.1985). Thus, the district court correctly interpreted Missouri law of strict products liability in a design defect case as requiring a finding that the product is unreasonably dangerous.

 The district court's analysis of whether the combine was unreasonably dangerous was also correct. In determining if a product is unreasonably dangerous, the Missouri Supreme Court has looked to Comment (i) of Section 402(A) of the *Restatement.* Comment (i) explains that unreasonably dangerous means dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases the product, with the ordinary knowledge common to the community as to its characteristics. *Aronson's Men's Stores v. Potter Electric Signal Company, Inc.*, 632 S.W.2d 472, 474 (Mo. banc 1982). This court, in applying Missouri's interpretation of Section 402A, has also looked at the obviousness of a defect or danger in determining if a product is unreasonably dangerous. *McGowne v. Challenge-Cook Bros. Inc.*, 672 F.2d 652, 663 (8th Cir.1982). Thus, in the instant case, the district court's review of the design of the combine to determine if it was dangerous to an extent beyond that which would be contemplated by an ordinary consumer and whether the danger of climbing into the bin of the combine was open and obvious was a proper interpretation of Missouri law in a design defect case.

 According to Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend his pleadings only by leave of court or by written consent of the adverse party after amendment as a matter of course is no longer available. Rule 15(a) also says that leave shall be freely given when justice so requires. Grant or denial of an opportunity to amend a pleading is within the discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). In the instant case, defendants' filed an answer to all four of plaintiffs' counts in their complaint. However, in defendants' answer to plaintiffs' First Amended Complaint, defendants inadvertently did not respond to Counts III and IV. The district court found that justice required that leave be granted to defendants to amend their answer to respond to Counts III and IV. The district court also determined that granting leave to defendants to amend their answer would result in little if any prejudice to the plaintiffs. We find that the district court did not abuse its discretion in granting defendants leave to amend.

After having carefully considered appellees' Motion to Assess Multiple Costs, Damages and Attorneys' Fees, we overrule that motion.

We have concluded that the district court's finding that the combine was not unreasonably dangerous was not clearly erroneous. We have also concluded that the district court correctly applied Missouri law of strict products liability in a design defect case which requires a finding that the product is unreasonably dangerous. We have also concluded that the district court did not abuse its discretion when it allowed the defendants to amend their answer to plaintiffs' First Amended Complaint under Rule 15(a) of the Federal Rules of Civil Procedure. We have also overruled defendants' Motion to Assess Multiple Costs, Damages and Attorney's Fees.

Accordingly, the district court's judgment for the defendants is affirmed.