Ronald ANDERSON; Mary Anderson,
Plaintiffs–Appellants,

American National Can Corporation,
Intervenor–Plaintiff,

v.

F.J. LITTLE MACHINE COMPANY,
Defendant,

Allied Products Corporation,
Defendant–Appellee.

No. 95–1221.

United States Court of Appeals,
Eighth Circuit.

Submitted June 14, 1995.

Decided Oct. 27, 1995.

John Simon, argued, St. Louis, Missouri, for appellants.

Mark Hellner, argued, Chicago, Illinois (Ian P. Cooper and B. Michelle Ward, St. Louis, Missouri, on the brief), for appellee.

Before WOLLMAN, FLOYD R. GIBSON and JOHN R. GIBSON, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Ronald and Mary Anderson appeal from the district court's entry of summary judgment against them on their products liability claim against Allied Products Corporation. Ronald Anderson's hand was caught and injured in a machine manufactured by Allied's predecessor when he tried to clean a metal roller while the machine was operating. The Andersons asserted failure to warn and defective design claims sounding in both negligence and strict liability. The district court granted Allied summary judgment on the ground that the danger from the pinch roller was open and obvious and the Andersons had therefore not established a failure to warn case. The Andersons appeal, arguing that: (1) the court failed to consider their defective design claims; (2) the court erroneously used Ronald Anderson's contributory fault to bar his recovery when contributory fault can only be used to diminish damages; and (3) the court erred in entering summary judgment when there was an issue of fact as to whether Anderson was aware of "the nature and extent of the potential danger" the machine presented. We affirm in part and reverse in part.

Ronald Anderson was injured in February 1988 while working at American National Can. He was a "qualified mechanic" and had worked there twenty-one years at the time of the accident. He had worked in his department for eight years. Anderson was working with a metal straightening machine when he noticed that the rollers on the machine were scratching the metal sheets it was processing. Rather than turning off the straightening machine, Anderson leaned over the guard rail and tried to wipe the upper roller clean with a cloth while the machine was running. A sign was posted at the machine that read: "Danger. Hand Hazard. Watch Your Fingers." Anderson admitted that he knew "there was a safer way" to clean the machine, which was to shut the machine down, but that cleaning the machine under power was "faster and easier." Anderson also knew of other people who had been hurt cleaning the rollers while the machine was under power. Moreover, even the Andersons' proposed expert conceded in his deposition that: "I'm sure given this man's experience, time that he's had in this plant, that he was well aware of the danger of an in-running nip."

Anderson's hand was pulled into the rollers, injuring his hand and fingers.

He sued Allied, alleging products liability theories of negligence and strict liability. Mary Anderson sued for loss of consortium. Allied moved for summary judgment. The district court held that the Andersons made no showing of failure to warn, and that the warning Ronald Anderson received was "legally sufficient." The court held: "Plaintiff admits knowledge of the danger and concedes that it was open and obvious." The court entered summary judgment for Allied.

■ We review an entry of summary judgment de novo, *Glass v. Medtronic, Inc.*, 957 F.2d 605, 607 (8th Cir.1992), using the same standard applied by the district court. Summary judgment is appropriate only when the record, viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

## I.

The Andersons argue that there was an issue of fact as to whether Ronald Anderson knew of the danger from the pinch roller and that, therefore, the court should not have entered judgment for Allied on their failure to warn claim.

■ Under Missouri law,[1] the causation element in failure to warn cases includes two separate requirements:

First, the plaintiffs' injuries must be caused by the product from which the warning is missing. : . . Second, plaintiffs must show that a warning would have altered the behavior of the individuals involved in the accident. . . . The presumption that plaintiffs will heed a warning assumes that a reasonable person will act appropriately if given adequate information. Thus, a preliminary inquiry before applying the presumption is whether adequate information is available *absent* a warning. In [*Duke v. Gulf & Western Mfg. Co.,* 660 S.W.2d 404, 418–19 (Mo.Ct. App.1983)], the court of appeals proceeded to recognize a presumption that a warning would be heeded only after finding that there was a legitimate jury question whether the plaintiff did not already know the danger. As causation is a required element of the plaintiffs' case, the burden is on plaintiffs to show that lack of knowledge.

*Arnold v. Ingersoll–Rand Co.,* 834 S.W.2d 192, 194 (Mo.1992) (en banc) (citations omitted) (emphasis in original).

In *Arnold,* the testimony of those involved in the accident indicated they were aware that there was danger of an explosion if gas fumes accumulated in their shop, yet they permitted such an accumulation. The court held that the plaintiff did not establish that any warning by the defendant would have altered the course of events leading to the accident, and that the failure to warn case should not have been submitted to the jury. *Id.*

■ In this case, there was abundant evidence from Ronald Anderson's deposition that he knew touching the moving pinch rollers was dangerous. He admitted that it was not necessary to risk that danger because there was a "safer way to do what [he was] doing," that is, to turn the machine off. He was aware that other employees at American National Can had been hurt cleaning rollers when the machine was running. Even more to the point, Anderson admits there was a sign above the machine that read: "Danger. Hand Hazard. Watch Your Fingers."

This evidence of knowledge negates the causation element the Andersons must prove, since a warning would not have provided additional information that would have influenced Ronald Anderson's conduct. *See Arnold,* 834 S.W.2d at 194; *Campbell v. American Crane Corp.,* 60 F.3d 1329, 1333 (8th Cir.1995) (under Missouri law, reversing judgment for plaintiff on failure to warn claim because danger was open and obvious).

■ To rebut this evidence of knowledge, the Andersons make two points. First, Ronald Anderson said in his deposition that he did not think cleaning the roller while the machine was under power was a hazard. This statement comes in the midst of a series of admissions that he was aware of the hazard. Merely contradicting one's earlier testimony will not create an issue of fact to stave off summary judgment where there is no indication that the damaging testimony was the result of mistake or confusion. *See Camfield Tires, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361, 1364–66 (8th Cir.1983); *Greiner v. City of Champlin,* 27 F.3d 1346, 1350 (8th Cir.1994).

■ Second, the Andersons argue that the warning should have been more specific. "Danger. Hand Hazard. Watch Your Fin-

1. This being a diversity case, we apply the substantive law of Missouri. *Pree v. Brunswick Corp.,* 983 F.2d 863, 865 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 65, 126 L.Ed.2d 35 (1993). We review the district court's determinations of state law de novo, without deference. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1220–21, 113 L.Ed.2d 190 (1991).

gers" warns of exactly the harm that happened to Anderson—a hand injury. The warning provided more than a "general awareness of danger," *Duke v. Gulf & Western Mfg. Co.*, 660 S.W.2d 404, 419 (Mo.Ct. App.1983), and is more than adequate under Missouri law. *See Arnold,* 834 S.W.2d at 194. The district court did not err in entering summary judgment for Allied on the failure to warn claim.

## II.

The Andersons also contend that the district court implicitly ruled that their claim was barred by Ronald Anderson's contributory fault. This argument ignores the fact that the Andersons had the burden as plaintiffs to prove causation by showing Ronald Anderson would have behaved differently if there had been a different warning. *Arnold,* 834 S.W.2d at 194. Failure to make a prima facie case was the basis of the district court's ruling; it is beside the point that Anderson's behavior in ignoring the warning may also have constituted contributory fault.

## III.

 Finally, the Andersons point out that the district court entered summary judgment on all their claims, apparently without considering their strict liability and negligence defective design claims. While the district court did state in the last sentence of the order: "The straightener was not unreasonably dangerous and Allied is entitled to judgment as a matter of law," there is no analysis leading up to this conclusion except for the failure to warn analysis. We conclude that the district court's order does not adequately consider the defective design claims.

Allied argues that even if the district court did not reach the design claims, we should affirm because the evidence shows that the danger was open and obvious. Allied argues that the obviousness of the danger forecloses a defective design claim.

Allied cites *Morrison v. Kubota Tractor Corp.*, 891 S.W.2d 422 (Mo.Ct.App.1994), in arguing that, so long as the danger is open and obvious, there can be no design defect claim. *Morrison* does indeed support Allied's conclusion as to the Andersons' negligence claim. *Morrison* was a negligence suit based on lack of a roll bar (ROPS) on a tractor. *Morrison* states: "If the absence of a ROPS is to be regarded as a design defect, it is a defect that is patent beyond doubt. Such an open and obvious lack of this safety feature on the tractor ... is not actionable under the negligence law of Missouri as declared by our Supreme Court." *Id.* at 427–28. But *Morrison* specifically reserves the question of "whether the open and obvious nature of the peril ... may justify a directed verdict in a products liability case brought on a *strict liability* theory after Missouri's adoption (by statute) of comparative fault in such cases." *Id.* at 428 n. 5 (emphasis in original).

In our recent case of *Drabik v. Stanley–Bostitch, Inc.,* 997 F.2d 496 (8th Cir.1993), we considered this question and held that Missouri courts have not adopted the "consumer-expectation" test in strict liability cases based on section 402(A) of the Restatement (Second) of Torts (1965). *Drabik,* 997 F.2d at 506. The "consumer-expectation" test is named for language in comment i to section 402(A) of the Restatement (Second) of Torts, which states: "The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." In *Drabik,* we held that the district court correctly submitted a defective design case to the jury, despite evidence that the plaintiff understood the danger the product posed:

> The Missouri Supreme Court has been resistant to establishing a strict definition for the term unreasonably dangerous. *See id.; Hagen v. Celotex Corp.,* 816 S.W.2d 667, 673–74 (Mo.1991) (en banc) (declining to define unreasonably dangerous in terms of a risk/utility test); *Lucas v. R.G. McKelvey Bldg. Co.,* 1992 WL 219182 at *7 (Mo. Ct.App. Sept. 15, 1992) ("[i]t is not evident what test a trial court should apply when determining whether a product is defective in design or whether summary judgment is ever appropriate in a design defect case"), *transferred to* 847 S.W.2d 806 (Mo.1993) (en banc). The practice established by

Missouri state courts was to submit § 402A cases to the jury without a specific instruction as to what constitutes unreasonably dangerous and allow the jury to make the ultimate determination.

997 F.2d at 506. This reasoning forecloses Allied's argument that the obviousness of the danger entitles it to summary judgment.[2]

However, Allied cites *Pree v. Brunswick Corp.*, 983 F.2d 863 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 65, 126 L.Ed.2d 35 (1993), in support of its argument that patent danger cannot form the basis for a defective design case. In *Pree,* the plaintiff's case failed both because the danger was patent and because the plaintiff failed to establish that there were other, safer designs that could have been used for the product. 983 F.2d at 866–67.

In this case, the Andersons produced the affidavit of a mechanical engineer who stated that he had inspected the machine that hurt Ronald Anderson. The engineer said:

> [T]he straightener leveler machine was defective at the time of Mr. Anderson's injury because the machine should have been equipped with an interlocked barrier guard of some type, protecting the in-running nip point, which would prevent the unsafe cleaning of the rollers of the machine while the machine was in operation.

In addition, the engineer's deposition was in the record. He stated that there should have been a guard enclosing the entire roll surface, and that it should have been interlocked with the machine so that a person could not have access to the face of the roll while the machine was running. He explained that rollers that rotate in proximity to other structural elements or form a nip with another roller create an in-running nip that will draw an individual's body part and pull the person into the nip. Even with some

guards placed over the roller, the roll face in this case was entirely unguarded, whereas it would have been better to have a fixed element guarding the entire roll face. The engineer stated that an angle iron could be extended over the top of the roll so that workers could not touch the roll face with the angle iron guard in place. The guard could be interlocked with a limit switch that would shut down the machine when the guard was opened. In fact, there were photographs in evidence that showed an interlocked guard had been added on the front side of the machine after the accident.

The expert's affidavit and deposition testimony is sufficient to defeat summary judgment on the defective design claims.

Allied argues that the mechanical engineer's testimony was not admissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Allied did not raise the *Daubert* issue in the district court, and therefore the district court did not rule on the issue. Under *Daubert,* the admissibility of scientific evidence is committed to the district court's discretion, within the boundaries set forth in that opinion, —— U.S. at ——, 113 S.Ct. at 2799; *see Pestel v. Vermeer Mfg. Co.,* 64 F.3d 382 (8th Cir.1995). In *Pestel,* a products liability plaintiff presented a mechanical engineer expert who had designed a guard for use in a stump-cutting machine. The *Pestel* district court excluded the guard from evidence because it had not been tested and because the expert admitted the guard could not be used without further design modifications. *Id.* at 384. This court held that the district court did not abuse its discretion in excluding the guard. *Pestel* did not hold that the guard was inadmissible as a matter of law, but rather deferred to the district court's exercise of its discretion. The Andersons' case differs from *Pestel,* as there

2. The dissent argues that "the obviousness of the danger is a key issue" and, referring to *Linegar v. Armour of America, Inc.,* 909 F.2d 1150 (8th Cir.1990), that it is material to the issue of whether a product is unreasonably dangerous. *Infra* at 1119. The dissent places more emphasis on obviousness than our cases justify. *Drabik* rejected the argument that knowledge of the risk compelled judgment for the manufacturer. 997 F.2d at 505–06. Obviousness does not trump all

other factors in determining what is unreasonably dangerous. That the obviousness is material stops far short of compelling judgment for the manufacturer, and indeed demonstrates that a fact finder must consider the issue. The question is whether the machine created an unacceptable risk of causing preventable accidents, and we held such a claim submissible in *Drabik,* 997 F.2d at 505–06.

was evidence that someone installed guards on the straightening machine, indicating that the use of some type of guard was feasible.[3] We cannot say as a matter of law that such expert testimony could not be admitted.

The dissent argues that the Andersons have not submitted enough evidence to allow the district court to rule that their evidence is admissible under *Daubert. Infra* at 1119–1120. *Daubert* was not raised in the district court. Thus, the district court did not have an opportunity to consider the foundational issues outlined in *Daubert,* nor to give the parties an opportunity to squarely address those issues. We should not rule a *Daubert* issue on the limited record before us. If Allied raises *Daubert* on remand, the district court will undoubtedly allow the parties to develop this issue.

. . . . .

We therefore reverse the order of the district court insofar as it rules against the Andersons on their strict liability defective design claim. We affirm the district court's entry of summary judgment on the failure to warn claims and on the negligent design defect claim.

FLOYD R. GIBSON, Circuit Judge, concurring and dissenting.

I agree with the majority's decision to affirm the district court's entry of summary judgment on the Andersons' failure to warn and negligent design defect claims. I disagree with the majority's decision reversing the district court's entry of summary judgment on the Andersons' strict liability defective design claim, and I respectfully dissent.

In order to recover under the Missouri law of strict liability in tort for defective design, the Andersons must show that "the design renders the product unreasonably dangerous." *Nesselrode v. Executive Beechcraft, Inc.,* 707 S.W.2d 371, 377 (Mo.1986). Missouri courts have recognized that the amorphous concept of "unreasonably dangerous" may be proven either through the consumer expectation test set forth in comment i of

§ 402A of the Restatement (Second) of Torts, or via the type of risk/benefit analysis discussed in cases such as *Barker v. Lull Eng'g Co.,* 20 Cal.3d 413, 143 Cal.Rptr. 225, 236–37, 573 P.2d 443, 454–55 (Cal.1978). *Nesselrode,* 707 S.W.2d at 376–78.

As the majority of this panel has noted, Missouri courts have declined to strictly define the phrase "unreasonably dangerous" in terms of either the consumer expectation test or risk/benefit analysis. *Id.* at 377–78. Instead, Missouri state courts typically submit the issue of whether a given product is defective as "unreasonably dangerous" to the jury "as an ultimate issue without further definition." *Id.* at 378. The Missouri courts' decision to leave the definition of "unreasonably dangerous" to the common sense of the jury should not, however, be mistaken for an endorsement of absolute liability. One way or another, the plaintiff must still prove the product was somehow unreasonably dangerous, and, therefore, defective. *Id.* at 375–76.

After carefully reviewing the record, I am unable to discover any evidence creating a genuine issue of material fact as to whether the straightener was "unreasonably dangerous" under any standard. Because the danger presented by the straightener could not have been more "open and obvious," the machine is clearly not defective under the consumer expectation test. *Linegar v. Armour of America, Inc.,* 909 F.2d 1150, 1153–54 (8th Cir.1990) (applying Missouri law). The key issue, then, is whether the Andersons presented any evidence sufficient to raise a factual issue as to whether the pinch roller was defective under some type of risk/benefit analysis standard. *See Pree v. Brunswick Corp.,* 983 F.2d 863 (8th Cir.) (propeller blades were not unreasonably dangerous where danger was open and obvious and no safer available alternative design existed), *cert. denied,* —— U.S. ——, 114 S.Ct. 65, 126 L.Ed.2d 35 (1993).

The majority concludes that the engineer's affidavit and deposition are sufficient to defeat summary judgment on the defective design claim. I disagree. Under the risk/ben-

---

**3.** The question of whether post-accident improvements are themselves admissible is not before us; we merely observe that the improvement would

be relevant to the district court's decision in ruling on the admissibility of the expert testimony.

efit standard, the basic issue is whether, through hindsight, the jury determines that "the risk of danger inherent in the challenged design outweighs the benefits of such design." *Barker,* 573 P.2d at 454. Relevant considerations include the gravity of the potential danger, the likelihood of the danger, the feasibility of safer alternative designs, the financial cost of alternative designs, and the adverse consequences to the product and the consumer resulting from the alternative design. *Id.* at 455.

The engineer's affidavit addresses none of these considerations. It merely asserts that the straightener was defective because it "should" have been equipped with an interlocked barrier guard "of some type." The affidavit fails to specify whether such an alternative design would have prevented the accident, whether it was technically feasible at the time of the accident, whether it would have created new safety hazards, or even what type of guard or alternative design "should" have been employed. I view this sweeping assessment as wholly conclusory.

The engineer's accompanying deposition further specifies the type of guard he recommends, but fails to address any other relevant considerations, not the least of which is the open and obvious nature of the hazard. Nevertheless, the engineer states in his deposition that it would have been "better" to have a fixed element guarding the roll face despite acknowledging the obviousness of the danger. Under any standard of analysis, the obviousness of the danger is a key issue. "Although not conclusive, the obviousness of a defect or danger is material to the issue whether a product is 'unreasonably dangerous'." *Linegar,* 909 F.2d at 1154 (quotation omitted). In this case, it is difficult to imagine a more glaringly apparent hazard. The machine performed exactly as it was supposed to have performed. The engineer's testimony, however, appears to have disregarded this critical inquiry as completely as Ronald Anderson himself disregarded the written warning clearly posted on the machine and his own personal knowledge of the hazard when he reached over the guard rail in order to place his hand into an open and obvious hazard.

There can be little doubt that additional guards of some sort might have been "better" for Ronald Anderson, but that is not the issue. In the design of any product there will always necessarily be tradeoffs, a tension between absolute safety versus function and affordability, and no product will ever be completely safe. *See Linegar,* 909 F.2d at 1154–55. In the absence of a more detailed assessment of the open and obvious nature of the hazard, the relevant safety alternatives, their technological availability, their practical feasibility, and the potential safety hazards necessarily engendered by such alternative designs, it signifies nothing to hire an "expert" to flatly state that the straightener "should" have been equipped with "some type" of guard, or could have been "better."

In addition to being insufficient as a matter of law to create a genuine issue of material fact as to whether the straightener was unreasonably dangerous, I believe the engineer's affidavit to be wholly inadmissible under *Daubert v. Merrell Dow Pharmaceuticals,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Under *Daubert,* which has been applied to both scientific evidence and technical issues calling for expert opinions, *Dunbar v. Shaklee Corp.,* 31 F.3d 638, 647 n. 15 (8th Cir.1994), expert testimony is admissible only if it is scientifically based and will assist the trier of fact in determining a fact in issue. *Daubert,* —— U.S. at ——, 113 S.Ct. at 2795–96.

In order to determine whether the expert testimony in issue is reliable under the first prong of *Daubert,* "the court must conclude that the testimony was derived from the application of a reliable methodology or principle in the particular case." *United States v. Martinez,* 3 F.3d 1191, 1198 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 734, 126 L.Ed.2d 697 (1994). Due to the conclusory nature of the engineer's expert affidavit and deposition, that determination is impossible. When assessing the reliability of expert testimony, *Daubert* suggests that the trial court consider a non-exhaustive list of factors including: (1) whether the concept has been tested, (2) whether the concept has been subject to peer review, (3) the known rate of error, and (4) whether the concept is general-

ly accepted by the community. The record is utterly bereft of any evidence supporting the scientific reliability of the engineer's opinion under these or any other criteria.

The majority distinguishes this case from *Pestel v. Vermeer Mfg. Co.*, 64 F.3d 382 (8th Cir.1995), on the basis that the excluded proffered alternative design in that case had not been properly tested and was admittedly unfeasible. This Court cannot say the same in this case only because we have no data whatsoever regarding the engineer's reasoning or scientific methodology, or the lack thereof. Ironically, there is less evidence of scientific reliability in this case than in *Pestel*. In that case, the district court was at least able to gauge the non-reliability of the expert's proffered alternative design based on the expert's reasoning and methodology. Here, we have no idea what scientific basis, if any, on which the Andersons' expert witness based his sweeping conclusions.

The majority also relies on photographs in evidence showing that someone had installed a guard on the front of the straightening machine some time after the accident as evidence of the proposed alternative design's feasibility and availability. But without any indication that this guard functioned successfully on the straightener for any period of time, effectively prevented the type of injuries at issue here, or is even the same type of device advocated in the engineer's perfunctory affidavit, I view such evidence as a poor substitute for the hallmarks of scientific reliability identified in *Daubert*. I think Judge Limbaugh's ruling on this issue was eminently correct.

Consequently, I would affirm the district court's entry of summary judgment in toto.