# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2171

_____

| | | |
|---|---|---|
| Samuel Sandage; Cheryl Sandage, | * | |
| | * | |
| Plaintiffs/Appellees, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Eastern |
| Bankhead Enterprises, Inc., doing , | * | District of Missouri. |
| business as Bankhead Transportation | * | |
| Equipment Company, | * | |
| | * | |
| Defendant/Appellant. | * | |
| | * | |
| Cottrell, Inc., | * | |
| | * | |
| Defendant. | * | |

_____

Submitted: December 18, 1998

Filed: May 17, 1999

_____

Before WOLLMAN,[1] BEAM, and LOKEN, Circuit Judges.

_____

BEAM, Circuit Judge.

_____

[1]The Honorable Roger L. Wollman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 24, 1999.

Bankhead Enterprises, Inc., appeals a jury verdict awarding damages for products liability. The claim, based on theories of negligence and strict liability, resulted from modifications Bankhead made to an automobile transport trailer. Samuel Sandage claims that the modifications caused him injury. The jury agreed and awarded $1,657,516. Bankhead argues on appeal that judgment as a matter of law is appropriate. We agree.

## I.    BACKGROUND

In 1976, Sandage began working as a driver for a company that transports automobiles. He worked there from 1976 to 1981 and then again from 1986 until 1990. The company hauls automobiles for manufacturers such as Chrysler, and uses several brands of trailers. Sandage drove a truck using a trailer manufactured by Cottrell, a model CS-11. He loaded approximately 2,700 cars each year. As the name indicates, the Cottrell CS-11 is a multiple level trailer that can transport eleven vehicles at a time, depending on the size, in eleven separately numbered spaces. Sandage received initial training along with follow-up instructions on transporting vehicles. The schooling included information on the loading of various trailers and on any model changes. The particular placement of vehicles in the numbered positions was left to the discretion of the driver.

The Cottrell CS-11 was modified by Bankhead, a defendant in this action. Its length was extended by four and one-half feet. The extension was accomplished by cutting the trailer virtually in half. A four and one-half foot section was then inserted in the middle, just in front of loading position number one. In the original trailer design, there were supporting posts on each side of the trailer near the front of the number one position. The Bankhead modification did not move these original supporting posts, but added four and one-half feet to the front of them. Thus, if a vehicle is loaded further forward in the number one position, because of the modification, the original posts are more to the rear in relationship to the vehicle. The modification also entailed adding

a second supporting post approximately seventeen inches in front of the original posts. Steel plates were then added, connecting the two supporting posts.

On December 17, 1990, Sandage was loading vehicles onto the modified CS-11. Although he cannot remember whether he drove the vehicle forward or backed it in, Sandage loaded a car in the number one position. Without remembering how far forward he positioned the vehicle in the number one position, Sandage testified that he put the car "where it needed to go," based on weight distribution factors.

After he parked the car, Sandage realized that when opening the door, it would not move outward fully, but instead would hit the Cottrell post or the Bankhead post and the connecting plates. Thus, to protect against damage to the new car, he placed a glove between the door and the vertical obstruction, and proceeded to squeeze out. Sandage's expert calculated that there were six and one-quarter inches available for egress. As he attempted to squeeze his six-foot-one-inch and approximately 200-pound frame out of this small opening, Sandage twisted and turned his body. Once he had cleared the tight spot, his body lurched forward and he hit his head on the trailer structure above the number one position. Sandage then completed loading the trailer, took some aspirin, and eventually delivered the load of automobiles. In the course of delivering the load, severe soreness began to develop in Sandage's lower back. He went to his family doctor and then to the company doctor. The lower back injury eventually required four surgeries and he is no longer able to work as a car hauler.

Sandage and his wife brought this products liability suit against Cottrell, for the original design of the CS-11 trailer, and Bankhead, for the modifications. As indicated, they assert theories of strict liability and negligence. Sandage alleges personal injury and his wife alleges loss of consortium as a result of her husband's injury. The jury found Bankhead liable for compensatory damages for personal injury based on product defect, assessing 100% of the fault to Bankhead. On the negligence claim, the jury found Bankhead liable for compensatory damages for personal injury, assessing 75%

of the fault to Bankhead and 25% of the fault to Sandage.  The jury awarded $1,557,516 for the injury to Sandage and $100,000 to his wife for loss of consortium. Cottrell was not found liable.  The district court denied Bankhead's renewed motion for judgment as a matter of law, and Bankhead appeals.

## II.    DISCUSSION

Missouri substantive law controls this case.   Under Missouri law, a products liability claim can be framed in strict liability, negligence, or breach of warranty theories.  See Linegar v. Armour of Am., Inc., 909 F.2d 1150, 1152 (8th Cir. 1990). Bankhead argues that the facts of this case cannot support, as a matter of law, the strict liability or negligence theories advanced by the Sandages.  Following a jury verdict, we review the sufficiency of the evidence, with the record analyzed in a light most favorable to the Sandages.  See Pree v. Brunswick Corp., 983 F.2d 863, 867 (8th Cir. 1993).

A favorable view of the evidence shows that Bankhead extended the Cottrell CS-11 trailer four and one-half feet, thereby allowing Sandage to pull a car forward some additional amount.  If a car was pulled forward, it meant that the driver's door would hit a side-post more towards the rear of the loaded car than it would in an unmodified trailer.  Sandage parked a car in a position "where it needed to go," which blocked the door and restricted his egress.  An expert, judging the available space for exit to be six and one-quarter inches, opined that the modified trailer was defective and unreasonably dangerous. The jury accepted these threads of evidence and awarded $1,657,516.  We conclude that this evidence is insufficient to support either a strict liability or negligence theory.

## A. Strict Liability

The necessary elements for a strict liability claim are provided by statute.[2] The salient inquiry in a case such as this is whether the product "creates an unreasonable risk of danger to the consumer or user when put to normal use." Miller v. Varity Corp., 922 S.W.2d 821, 825 (Mo. Ct. App. 1996). Bankhead argues that the modified trailer was not defective and unreasonably dangerous as a matter of law, and in any event, the evidence was insufficient to show that the modification caused the injury.

A strict liability claim is set within the background principle that manufacturers are not liable "'simply because the use of their products involve some risks.'" Pree, 983 F.2d at 868 (quoting Elliott v. Brunswick Corp., 903 F.2d 1505, 1507 (11th Cir.

_____

[2]Under the title "products liability," Missouri statute provides:

As used in sections 537.760 to 537.765, the term "products liability claim" means a claim or portion of a claim in which the plaintiff seeks relief in the form of damages on a theory that the defendant is strictly liable for such damages because:

　　(1)　The defendant, wherever situated in the chain of commerce, transferred a product in the course of his business; and

　　(2)　The product was used in a manner reasonably anticipated; and

　　(3)　Either or both of the following:

　　(a)　The product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold; or

　　(b)　The product was then unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics, and the plaintiff was damaged as a direct result of the product being sold without an adequate warning.

Mo. Rev. Stat. § 537.760.

1990)).  Every product has some coloring of risk.  We do not permit products liability law to restrict the manufacture of products to "only one version of a product, that being the very safest design possible." Linegar, 909 F.2d at 1154.  Instead, the law demands that we focus our efforts on defects that are unreasonably dangerous.

The expression, "unreasonably dangerous," has been the subject of great dispute. See, e.g., Nesselrode v. Executive Beechcraft, Inc., 707 S.W.2d 371, 377-78 (Mo. 1986) (en banc) (finding that Missouri follows the minority approach in defining "unreasonably dangerous").  The result in Missouri has been to leave the interpretation largely as "a matter of common sense, the court's or the jury's." Linegar, 909 F.2d at 1153.  Although the determination of unreasonably dangerous was presented to the jury "without further definition," as is required by the Missouri cases, see Nesselrode, 707 S.W.2d at 378, we conclude that the case should not have reached that point.

Sandage's threads of evidence are not sufficient to weave a tapestry strong enough to withstand the weight of common sense.  Sandage loaded cars on a trailer thousands of times, and testified that on that day he parked the car in question "where it needed to go."  When he did so, he opened the door and it would clearly not open enough to allow simple exit.  Instead of adjusting the vehicle to allow for safe egress, which was within his discretion, he squeezed, manipulated, and twisted his large frame out through a small opening.  These facts do not describe a product that is defective and unreasonably dangerous in the face of basic principles.

First,  the "'obviousness of a defect or danger is material to the issue whether a product is unreasonably dangerous.'" Linegar, 909 F.2d at 1154 (quoting McGowne v. Challenge-Cook Bros., Inc., 672 F.2d 652, 663 (8th Cir. 1982) (emphasis omitted)); cf. Miller, 922 S.W.2d at 826 (concluding that the open and obvious nature of a defect cannot bar recovery, but can properly be considered).  "'Patent and obvious'" dangers are not the "'sort that a jury should resolve.'" Pree, 983 F.2d at 868 (quoting Elliott, 903 F.2d at 1507).  What could be more obvious than a door hitting a post and

providing little to no room to exit? Dangerousness was apparent. It is not the type of determination that should be submitted to a jury.[3]

Although the design of the allegedly defective product was patently obvious, Sandage implicitly argues that he was forced to park the vehicle in the chosen location because that is "where it needed to go," thus attempting to eviscerate the obviousness of the danger. This does not follow in simple logic. Sandage clearly testified that he had discretion to position cars on a trailer based on many factors. Weight distribution appears to be the most important of those factors. Despite not remembering any detail whatsoever concerning the actual placement of the vehicle at issue, it is undisputed that he could pull forward or back-in, adjust other vehicles, alter the placement and type of automobiles in the numbered spaces, and make any adjustments necessary. Therefore, Sandage's testimony that he put the car "where it needed to go," does not undermine the obviousness of the alleged defect. Even the opinion of Sandage's expert–that the product is unreasonably dangerous because it allowed only a six and one-quarter inch space for exit[4]–suggests the obviousness of the alleged defect.

---

[3]Juries typically consider claims where the alleged defect is not obvious or is latent. See, e.g., Rauscher v. General Motors Corp., 905 S.W.2d 158, 160 (Mo. Ct. App. 1995) (finding that a jury could surely find that an automobile that is subject to unpredictable stalls and stops is in a defective condition which is unreasonably dangerous); Patterson v. Foster Forbes Glass Co., 674 S.W.2d 599 (Mo. Ct. App. 1984) (baby bottle unpredictably exploded after a year's use).

[4]We do not understand how an expert could reach such a precise measurement of the exit space available to Sandage and thereby declare the product unreasonably dangerous, given Sandage's vague and equivocal testimony. He could not remember where the car was parked, how far forward he pulled, where the door struck the side-posts, or even if he pulled the car forward or backed-in the car.

Second, the "consumer expectation" test requires that the product be "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Restatement (Second) of Torts § 402A cmt. i (1965); see Pree, 983 F.2d at 865 & 867 (citing Cryts v. Ford Motor Co., 571 S.W.2d 683, 688 (Mo. Ct. App. 1978) and Restatement (Second) of Torts § 402A, cmt. i); see also Linegar, 909 F.2d at 1153-54; cf. Newman v. Ford Motor Co., 975 S.W.2d 147, 153-54 (Mo. 1998) (en banc) (although Missouri courts have not expressly adopted the consumer expectation test, litigants are free to argue any theories of unreasonably dangerous). But see Drabik v. Stanley-Bostitch, Inc., 997 F.2d 496, 506 (8th Cir. 1993) (finding Missouri courts have not expressly adopted the consumer expectation test) (citing Nesselrode, 707 S.W.2d at 377). Sandage expected that if he parked a vehicle near a post, the door would hit the post when opened. With his vast experience loading vehicles, he knew the exit space would be smaller the further he pulled forward. Thus, the product cannot be said to be dangerous beyond the expectations of the ordinary consumer with knowledge as to its characteristics.

Something so obvious, and within the expectations of a consumer with knowledge of the characteristics is not defective and unreasonably dangerous. See Linegar, 909 F.2d at 1153-54 (relying upon the open and obvious nature of the product and the consumer expectation test to conclude that the product was neither defective nor unreasonably dangerous). The district court "should have declared as a matter of law, that the [trailer modifications] were not defective" and unreasonably dangerous. Pree, 983 F.2d at 867; see also Linegar, 909 F.2d at 1153 (finding the district court should have made the decision as a matter of law and directed a verdict or granted judgment notwhithstanding the verdict).

## B.     Negligence

The negligence theory suffers flaws similar to those illustrated with the strict liability claim.  A negligence claim requires proof of a duty, the breach thereof, and proximately caused damages.  See Morrison v. Kubota Tractor Corp., 891 S.W.2d 422, 425 (Mo. Ct. App. 1994).  Bankhead argues that the evidence fails to establish a duty because any allegedly defective and dangerous condition was obvious and apparent. "In a negligence action, whether a duty exists is entirely a question of law for the court."  Id.

The Missouri Supreme Court has drawn the line on negligence claims, stating that:

> [W]here the product is free of latent defects and concealed dangers; where the perilous nature of the product and the danger of using it is obvious and not concealed; where its normal functioning creates no danger not known to or appreciated by the user; where it is properly manufactured to accomplish the function for which it is designed, the manufacturer has "satisfied the law's demands . . . ."

Stevens v. Durbin-Durco, Inc., 377 S.W.2d 343, 348 (Mo. 1964); see Morrison, 891 S.W.2d at 426.

As noted, the modifications to the trailer were obvious and the danger patently clear.  Nevertheless, Sandage argues that the danger was not "appreciated."  This argument is disingenuous given the evidence depicting years of experience using these trailers and thousands of loadings.  Cf. Morrison, 891 S.W.2d at 427 (discussing the years of experience and understanding of the product).  Any ordinary and reasonable person could easily see that the car door was blocked and there was not enough room to exit safely.  The jury looked beyond the mark, and we cannot uphold this verdict as a matter of law.

## III. CONCLUSION

For the foregoing reasons, we conclude that judgment as a matter of law should have been granted and therefore reverse and remand for entry of judgment in favor of Bankhead.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.